**Brian L. BENNETT, Appellant–Plaintiff,**

v.

**Carole BRODERICK, Appellee–Defendant.**

**No. 64A04–0606–CV–332.**

Court of Appeals of Indiana.

Dec. 27, 2006.

---

Jill Sisson, Valparaiso, IN, Attorney for Appellant.

Mitchell A. Peters, Richard A. Miller & Associates, Merrillville, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Brian Bennett appeals from a small claims judgment in favor of Carole Broderick on his breach of contract claim. We address two issues on review:

1. Whether a binding contract was formed when Bennett tendered a postdated check as payment of the security deposit when he executed a residential lease with Broderick.

2. Whether Broderick repudiated the lease.

We reverse and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

On June 20, 2005, Bennett and his wife met with Broderick to execute a twenty-four-month residential lease agreement ("the lease") to begin August 1, 2005. The parties met at Broderick's rental property in Valparaiso, negotiated a slight change to the lease,[1] and then executed the lease. The lease provides, in relevant part:

3. [Bennett] agrees to pay [Broderick], as rent for the above described premises, the sum of Nine Hundred and 00/100 ($900.00) Dollars per month, payable in advance of the 1st day of each month beginning on August 1, 2005[,] and continuing to each month thereafter for the term of the Initial Lease Agreement. . . .

4. [Bennett] has on deposit with [Broderick] the sum of Nine Hundred and 00/100 ($900.00) Dollars. Said sum shall be a security deposit to secure [Bennett's] performance of this Agreement, and to compensate [Broderick] for any unpaid rent, utility bills, or repairs to the premises, except for repairs resulting from reasonable natural wear and tear to the premises. . . .

\* \* \*

14. Any of the following acts or omissions shall constitute a material breach of this Agreement by [Bennett]:

(a) [Bennett's] failure to pay any rent or other sum payable under this Agreement on the date it becomes due.

(b) [Bennett's] nonperformance or breach of any term, covenant, condition, or provision of this Agreement.

\* \* \*

---

1. The negotiated change dealt with the end term of the lease and is not material to this appeal.

15. In the event that [Bennett] commits a material breach of this Agreement, as defined in Paragraph 14 hereof, [Broderick] may, in addition to any other legal or equitable remedies that may be available to [Broderick]:

\* \* \*

(b) Terminate this Agreement and [Bennett's] right to possession of the premises in the manner provided below, and commence an action against [Bennett] to recover possession of the premises and for such damages as may be available at law.

Appellant's App. Tab 4 at 5, 8.

At their meeting on June 20, Bennett delivered a personal check to Broderick for $1800. The lease required a $900 security deposit to be paid when the lease was signed and $900 monthly rent to be paid by the first day of each month. Bennett meant the check to cover the security deposit and the first month's rent. At the same meeting, Bennett informed Broderick that he and his family planned to take an extended vacation, and he provided Broderick with cell phone contact numbers and his address in West Lafayette.

After Bennett had left the meeting, Broderick noticed for the first time that the check was written for an amount in excess of the security deposit required by the lease and that the check was postdated. She took the check to her bank that afternoon, where a teller told her that the check could not be "accept[ed,]" "deposit[ed,]" or "cash[ed]" because it was postdated. Transcript at 29, 30. That same day, Broderick attempted to reach Bennett on his cell phone regarding the check. She left a message on his voicemail, but she received no reply.

On June 25, 2005, Broderick sent a letter to Bennett via priority mail with delivery confirmation requested. With the let-

ter, Broderick returned the postdated check and asked what the check was intended to cover. She also reminded Bennett that the security deposit was due when he signed the lease, and she asked him to inform her by July 1, 2005, whether he intended to pay the security deposit. The letter provided: "No response from you will be considered a refusal to pay and the agreement should be considered null and void." Appellant's App. Tab 4 at 23.

Bennett did not reply by July 1, 2005, to Broderick's message on his cell phone or to Broderick's letter. Bennett first received Broderick's letter on July 21, 2005, when he and his family returned to Indiana from their vacation. He had not received her cell phone message because he had lost his phone. Bennett immediately telephoned Broderick upon receiving her letter on July 21. When he inquired about the status of the lease, Broderick informed him that she "no longer considered the lease to be valid." Appellee's Brief at 3.

Bennett filed a breach of contract action against Broderick in small claims court, seeking to recover the costs incurred in finding another residence. After a hearing, the small claims court made special findings and entered judgment for Broderick. Bennett appeals.

## DISCUSSION AND DECISION

### Standard of Review

In the appellate review of claims tried by the bench without a jury, the reviewing court shall not set aside the judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *City of Dunkirk Water and Sewage Dep't v. Hall,* 657 N.E.2d 115, 116 (Ind.1995) (stating standard of review in appeal from small claims court). In

determining whether a judgment is clearly erroneous, we will not reweigh the evidence or determine the credibility of witnesses but will consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Id.*

Small claims actions are "informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law." Ind. Small Claims Rule 8(A). Although the court here made special findings, the formal entry of special findings is "contrary to the policy announced in Small Claims Rules 8 and 11," which provide that small claims trials are informal and require only that small claims judgments "shall be reduced to writing." *Bowman v. Kitchel,* 644 N.E.2d 878, 879 (Ind.1995) (quoting Ind. Small Claims Rule 11(A)). Thus, the special findings entered below do not guide our review.

■■■ Here, because Bennett had the burden of proof at trial on his breach of contract claim, he appeals from a negative judgment. See *Harbours Condominium Ass'n v. Hudson,* 852 N.E.2d 985, 989 (Ind. Ct.App.2006). When a party appeals from a negative judgment, he must demonstrate that the evidence points unerringly to a conclusion different from that reached by the trial court. *Mominee v. King,* 629 N.E.2d 1280, 1282 (Ind.Ct.App.1994). We will reverse a negative judgment only if the decision of the trial court is contrary to law. *Id.* In determining whether a trial court's decision is contrary to law, we must determine if the undisputed evidence and all reasonable inferences to be drawn therefrom lead to but one conclusion and the trial court has reached a different one. *Id.* Because we will not reweigh the evidence or judge the credibility of witnesses,

the question presented is whether the judgment against Bennett is contrary to law. When a question of law is dispositive, we owe no deference to the trial court. *Kopetsky v. Crews,* 838 N.E.2d 1118, 1123 (Ind.Ct.App.2005).

### Formation of Contract

■■■ Broderick contends that a binding contract was not formed. "An offer, acceptance, consideration, and manifestation of mutual assent establish the existence of a contract." *Indiana Dep't of Corr. v. Swanson Servs. Corp.,* 820 N.E.2d 733, 737 (Ind.Ct.App.2005) (citation omitted). "There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract." *Id.* (citation omitted). Broderick alleges that Bennett's payment of $1800 with a postdated check is evidence that there was no meeting of the minds and that the postdated check did not constitute consideration for execution of the lease. We cannot agree.

Indiana Code Section 26–1–2.1–113(a) provides: "An instrument may be antedated or postdated. The date stated determines the time of payment if the instrument is payable at a fixed period after that date. Except as provided in [Indiana Code Section] 26–1–4–401(c), an instrument payable on demand is not payable before the date of the instrument." And Indiana Code Section 26–1–4–401(c) provides, in relevant part, that a bank "may charge against the account of a customer a check that is otherwise properly payable from the account, even though payment was made before the date of the check, unless the customer has given notice to the bank of the postdating describing the check with reasonable certainty."[2] Thus,

**2.** Historically, a postdated check was deemed a promise to pay as of the postdate. *Nedder-* *man v. State,* 198 Ind. 187, 152 N.E. 800, 800 (1926). Indiana Code Section 26–1–4–401(c)

although payment of a postdated check is not due until the date indicated, Indiana Code Section 26–1–4–401(c) allows a bank to ignore the postdate and honor[3] a customer's check when it is presented.

Here, Broderick offered to lease the rental property in Valparaiso to Bennett for twenty-four months beginning August 1, 2005. Bennett accepted that offer, and the parties met on June 20, 2005, to execute the lease. Upon signing the lease, Bennett gave Broderick a check in the amount of $1800 to cover the security deposit and the first month's rent. Broderick accepted but did not inspect the check. Thus, the elements of offer and acceptance have been met.

■ But Broderick argues that "there was no mutual agreement and meeting of the minds regarding when and how Bennett was to pay Broderick, and what amount of money he was to pay her." Appellee's Brief at 7. As evidence, she notes first that Bennett paid more than required at the execution of the lease. But the lease did not limit payment upon execution to *only* the security deposit. Bennett paid $1800, an amount easily discernable as the total of the $900 security deposit plus the first month's rent. Thus, we hold that Bennett's payment of an amount in excess of the security deposit does not show there was no meeting of the minds.

■ Broderick also contends that no contract was formed because the postdated check did not constitute consideration. She points out that the lease required the security deposit to be "on deposit" upon execution of that contract and that, "as a result of Bennett's postdating of [the

check], Broderick could not possibly deposit [it] until on or after August 1, 2005." *Id.* at 11. We cannot agree.

After Bennett had left the June 20 meeting, Broderick realized that the check was postdated, and she immediately took it to her bank. In that regard, Broderick testified:

Q: Mrs. Broderick, can you tell me did you attempt to present that check to the bank for cashing?

A: Yes, I took the check to the bank, the bank would not accept the check because it was postdated.

＊ ＊ ＊

Court: Which bank did you go to?

A: Centier Bank, my bank.

Court: Who did you talk to, some teller?

A: Just a teller.

Court: Drive through window or go into the bank?

A: No, I went into the bank.

Court: And you gave them this $1800 check?

A: I asked them if I was going to be able to deposit that check and she said no that it was postdated.

Court: Did you say did you know that the law was that [with] postdating really the date means nothing—it's whether there is money in the account I suppose. That's what I always thought about a postdated check, it's good until you can't cash it but they said they would not even try to deposit it?

A: I just asked her if I was going to [be] able to cash this check and she said no because it was postdated.

---

was added in 1993 because the automated check collection system cannot accommodate postdated checks. Ind.Code § 26–1–4–401 (citing U.C.C. cmt. 3).

**3.** "To 'honor' is to pay or to accept and pay or where a credit so engages to purchase or discount a draft complying with the terms of the credit." Ind.Code § 26–1–1–201(21).

Court: Did she say she would not even accept it or she wouldn't run it through for you?

A: She just said—

Court: She wouldn't even try?

A: Yea[h]. I mean I just wanted to know whether, I just wanted to know if it was a legal document. It was after that that I wrote the letter to Mr. Bennett.

Court: I understand, but there is a difference between wanting to know whether it's a legal document, A, and B you wanted to know whether it was good or not—

A: Right.

Court: NSF or not, bounced or good, I suppose, but they didn't even go to whether it was good or NSF because they just said we're not even going to take this check and try to run it through or anything.

A: Uh-huh.

Transcript at 29, 30–31.

We conclude, however, that Broderick did receive the security deposit. A bank may—but is not obligated to—cash a check that is payable to its customer and drawn on another bank. Even if such a check is cashed by the depositary bank, payment is provisional, i.e., subject to final settlement with the payor bank. Here, when the teller declined to "cash" Bennett's check, that did not mean that Bennett's check was not "good," but only that it was not payable and would not be paid at Centier Bank. The teller was incorrect as a matter of law when, according to Broderick's testimony, she declined to deposit Bennett's check in Broderick's account. Such a deposit would have been a provisional credit subject to Centier's funds available policy, a policy that would provide that the funds attributable to Bennett's check would not be available for withdrawal until a later date.[4] As an employee of Centier Bank, the putative depositary bank, the teller had no actual or apparent authority to determine that the check was not "good" and would not be honored when presented for final payment to the payor bank, Lafayette Bank and Trust, and Broderick had no right to rely on any such representation.

A check is not cash, and it is not a promise that the check will be paid when presented to the payee's bank. A check is the maker's promise that the check will be paid when presented to the maker's bank, the payor bank. See Ind.Code § 26–1–3.1–602 ("an instrument is paid to the extent payment is made: (1) by or on behalf of a party obliged to pay the instrument; and (2) to a person entitled to enforce the instrument."). Here, Broderick did not present the check to the payor bank, see Ind.Code § 26–1–3.1–501, and the payor bank did not dishonor the check, see Ind. Code § 26–1–3.1–502. Further Bennett offered his bank statement into evidence, which showed that his account contained sufficient funds for the payor bank to honor his check and pay Broderick on his behalf if the check had been presented.[5] *See id.*

---

4. Regulation CC of the Code of Federal Regulations requires banks "to make funds deposited into accounts available for withdrawal, including availability schedules." 12 C.F.R. § 229.1(b)(2). Such policies allow a depositary bank time to collect the funds from the payor bank and allow the payor bank either to transmit the funds or return the check for not sufficient funds (NSF), before the deposit is made available for withdrawal from the customer's account. A bank must disclose its funds available policy to its customers. 12 C.F.R. § 229.15.

5. Bennett's bank statement shows that his balance beginning June 26, 2005, was $8896.00; his balance on July 27, 2005, was

■ We conclude that Bennett satisfied the lease's requirement that the security deposit be paid upon execution of the lease. Bennett tendered and Broderick accepted a postdated check in payment of the security deposit. The lease did not restrict the manner of payment. Legal payment can be made in any medium that the party obligated offers and the party to whom payment is due accepts as payment. *Lamb v. Thieme,* 174 Ind.App. 287, 367 N.E.2d 602, 603 (1977). The security deposit was "on deposit" with Broderick when Bennett gave her his check. There is no evidence that the check would not have been honored when presented to the payor bank. Thus, Broderick's contention that the lease is not binding due to lack of consideration is incorrect as a matter of law.

### Breach of Lease

Bennett contends that Broderick "unilaterally repudiate[d the] executed lease after accepting a postdated check as consideration for payment of the security deposit and the first month's rent." Appellant's Brief at 4. We must agree.

After talking to the teller at her bank, Broderick attempted to reach Bennett by cell phone to discuss the postdated check. And on June 25, 2005, Broderick sent a letter to Bennett, delivery confirmation requested, returning the postdated check and requesting payment of the security deposit by July 1, 2005, if Bennett was still interested in renting the property. The post office notified Broderick that her letter was delivered on June 27, 2005. When Broderick received no reply by July 1, she assumed that Bennett was "not interested" in renting the property. Transcript at 27. She testified further that "the reason she called [the lease] off was because [she] didn't get [the] security deposit[.]" *Id.*

$7495.34; and his debits for that period to-

■ As noted above, we have concluded that Broderick received the security deposit when she accepted Bennett's check. The check was a negotiable instrument, which Broderick did not negotiate. Instead, she testified that she had a conversation with the teller at her bank in which she asked whether the check was "good" and was told that it was not. Transcript at 31. Thus, Bennett paid the security deposit when the lease was signed and he delivered the check to Broderick. The parties had a binding contract, which Broderick repudiated. We conclude that Broderick breached the lease when she terminated the lease and refused to rent the property to Bennett without legal justification.

### Conclusion

In sum, we conclude that on June 20, 2005, Broderick and Bennett entered into a binding contract for the lease of her rental property. Bennett accepted Broderick's offer to lease the property when he executed the lease. And Bennett's delivery of a check for the security deposit, even though postdated, met the term of the lease requiring a security deposit to be paid upon execution of the lease and constituted payment of that amount. Broderick had no right to rely on the opinion of a teller employed by the depositary bank that Bennett's check would not be honored by his bank, the payor bank. Thus, Broderick's repudiation of the lease in late July was a breach of the lease.

As a result of the breach, Bennett is entitled to consequential damages. The determination of damages is a question of fact for the trial court. But because the small claims court ruled in favor of Broderick, the court did not reach that issue.

taled $1406.63.

Thus, we remand for a determination of damages. In lieu of another hearing, we instruct Bennett to provide the court with a copy of all exhibits and the transcript of the hearing submitted on appeal and instruct the court to determine damages based on the existing record.

Reversed and remanded with instructions.

FRIEDLANDER, J., and DARDEN, J., concur.