Jeff REAM and Nancy Ream, Appellants/Plaintiffs/Counterclaim–Defendants,

v.

YANKEE PARK HOMEOWNER'S ASSOCIATION, INC., Appellee–Defendant/Counterclaim–Plaintiff.

No. 44A03–0904–CV–146.

Court of Appeals of Indiana.

Oct. 28, 2009.

Eric C. Bohnet, Indianapolis, IN, Attorney for Appellants.

Max A. Myers, Myers Law Office, Fort Wayne, IN, Attorney for Appellee.

## OPINION

BRADFORD, Judge.

Appellants/Plaintiffs/Counterclaim–Defendants Jeff and Nancy Ream (the "Reams") appeal the trial court's order in favor of Appellee/Defendant/Counterclaim–Plaintiff Yankee Park Homeowner's Association, Inc. ("Yankee Park") terminating the Reams' leases for and evicting them from Lots 50 and 68 in Yankee Park. On appeal, the Reams raise three issues, which we restate as follows:

I.    Whether the trial court erred in finding that Yankee Park demonstrated a legal basis for evicting the Reams from Lots 50 and 68;

II.   Whether the trial court erred in denying the Reams' claim for equitable relief to ensure that the Reams could place trailers on their lots as they saw fit; and

III.  Whether the trial court committed reversible error by denying the Reams' claim for damages.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Yankee Park is a not-for-profit cooperative organization which owns and operates a seasonal trailer park on Big Horn Lake in LaGrange County. Yankee Park is divided into a number of lots that are leased to approved persons for a term of ninety-nine years. Each lessee of a lot in Yankee Park becomes a voting member of Yankee Park.

### Placement/Movement of Trailer

The lease for each of the lots located in Yankee Park provides that "the only residence allowed upon the premises shall be a mobile home and such mobile home, if not currently placed upon said lot, shall be approved by the Board of Directors of [Yankee Park]" ("Board of Directors"). Appellants' App. vol. 1, p. 73. With respect to moving or replacing an existing trailer, the bylaws of Yankee Park provide that prior to moving a trailer into or within the park, the lessee must submit a plan and obtain approval from both the Board of Directors and the lessee's neighbors. Likewise, the Park Rules and Regulations, which are attached to each lease, provide as follows:

Moving/Replacing Trailers

1. Written notice must be given 2 weeks prior to any trailer moving in the Park. You must state your intention for the move (new trailer, open lot).

2. If a trailer is to be replaced, specifications of the new trailer need to be submitted for approval by the Board of Directors, in writing (size, year).

3. Your adjacent neighbors must be notified. The Board of Directors will work with everyone in determining lot boundaries and trailer location.

\*    \*    \*    \*    \*    \*

5. No trailer may block access areas, designated roadways, or utilities. If an excessive amount of common ground is needed for new trailers, an additional charge may be incurred by the lot/trailer owner.

Appellants' App. vol. 1, p. 186.

### Default/Termination of Lease

The lease for each of the lots located in Yankee Park provides that the lessee and all members of the lessee's family and guests must follow the Rules and Regula-

tions attached to the lease. In addition, the Board of Directors may also terminate the lease "if the Lessee does not make the payments when due and such default exists for a period of sixty (60) days or more, or if the Lessee fails to perform any provision of the lease which is to be performed by the Lessee, and such default exists for a period of thirty (30) days or more" following thirty days written notice of the default by the Board of Directors. Appellants' App. vol. 1, p. 77. The default provision of the lease specifically provides as follows:

> Upon any such termination of this lease, all membership rights of Lessee in Lessor shall terminate and all payments made by Lessee to Lessor for a Membership Certificate shall be retained by Lessor.

Appellant's App. vol. 1, p. 77.

### Termination of Leases for Lots 50 and 68

At some point prior to 2003, a trailer that was placed, by a prior lessee, on Lot 68 became an issue because it was too large for the space available, and the trailer obstructed the effective and efficient use of the access road around Lots 50 and 68. Rather than remove the trailer from the Park, the Board of Directors and the leaseholders at the time eliminated the issue by placing the trailer astride Lots 50 and 68.

In the spring of 2003, the Reams obtained an interest in Lots 50 and 68. The Reams paid approximately $6,255 for their interest in and membership certificate for each lot. At this time, the above-mentioned trailer straddled Lots 50 and 68. In June of 2004, the Reams moved the trailer solely onto Lot 68. The Reams, however, failed to notify their neighbors or provide the Park Board of Directors with the required two weeks' written notice pri-

or to the move as required by their leases and the Park Rules and Regulations. On June 28, 2004, the Board of Directors notified the Reams that they were in violation of their lease and the Park Rules and Regulations because they had not submitted a plan for board approval before moving their trailer and also because they had moved their trailer into a position where access to the sewer collection and holding box was no longer possible. The June 28, 2004 letter indicated that in accordance with the terms of the lease and the Rules and Regulations, the Board of Directors had the right to terminate the Reams' leases for Lots 50 and 68 if the default was not corrected within seven days of the notice or if the violation was later repeated. Over the next few months, the parties engaged in numerous communications regarding the placement of the trailer on Lots 50 and 68.

In October of 2004, the Reams, again without notice to the Board of Directors or their neighbors, moved the trailer onto Lot 50. The Reams claimed to have made this move in accordance with a letter sent by an attorney representing Yankee Park. The Board of Directors acknowledged this letter, but argue that despite the letter, which mistakenly alluded only to Lot 50 rather than Lots 50 and 68, the Reams had been notified that due to the size of the trailer, the only acceptable position for the trailer was "exactly where it was when [the Reams] bought it." Tr. p. 125. The Reams were again notified that they were in violation of their leases and the Rules and Regulations and that they had until November 15, 2004, to relocate their trailer as directed by the Board.

In November of 2004, the Reams again moved the trailer without notification to the Board of Directors or their neighbors. The trailer was again placed astride Lots 50 and 68, but was not returned to the

position it had occupied when the Reams acquired an interest in the lots.

### Lower Court Proceedings

On November 17, 2004, the Reams initiated this suit against Yankee Park, seeking damages and equitable relief. Yankee Park timely answered and filed a counterclaim. On May 4, 2007, the Board of Directors notified the Reams that their leases on Lots 50 and 68, as well as three other lots leased by the Reams, had been terminated "because [they had] defaulted by failing to perform [their] obligations under [their] Leases." Appellants' App. vol. 1, p. 162. The Board of Directors subsequently initiated eviction proceedings in the small claims court but eventually refiled this claim as an amended counterclaim in the instant action. The trial court conducted a bench trial of all claims raised by the parties on June 26, 2008. Following the bench trial, the trial court ordered as follows:

> 1. The request of the Reams for a declaratory judgment regarding legal descriptions for the lots at Yankee Park is denied;
>
> 2. The claim by the Reams that they have been the victims of uneven treatment by Yankee Park is found to be frivolous and groundless;
>
> 3. All relief sought by the Reams is therefore denied;
>
> 4. The counter-claim of Yankee Park for eviction and possession of the two (2) lots, namely Lots 50 and 68 is hereby granted and the Reams are given thirty (30) days from the date of this Judgment to remove their personal property, belongings and effects from any trailer,

other type of living unit or out building on any of said lots;[1]

\* \* \* \* \* \*

> 7. Yankee Park shall ensure that a trailer can be placed on Lot 49, upon request by the owner, and in conformity with their rules and regulations.

Appellants' App. vol. 2, p. 11–12. This appeal follows.

## DISCUSSION AND DECISION[2]

### I. Standard of Review

Upon appeal of claims tried before the bench without a jury, we will set aside the judgment only upon a showing that the judgment is clearly erroneous. *Bennett v. Broderick*, 858 N.E.2d 1044, 1047 (Ind.Ct. App.2006), *trans. denied.* In determining whether a judgment is clearly erroneous, we will neither reweigh the evidence nor determine the credibility of witnesses, but will consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Id.* Where, as here, the trial court has issued written findings and conclusions, we engage in a two-tiered review, determining first, whether the evidence supports the findings and second, whether the findings support the judgment. *Balicki v. Balicki*, 837 N.E.2d 532, 534 (Ind.Ct.App.2005), *trans. denied.* In deference to the trial court's proximity to the issues, we will disturb the judgment of the trial court only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* However, when a question of law is dispositive, we owe no deference to the trial court and review the issue *de novo. Bennett*, 858 N.E.2d at 1047.

---

1. We interpret this portion of the trial court's judgment to include the trailer itself since it is personal property and was not subject to the forfeiture provision of the lease.

2. The Reams have filed a motion for oral argument, which we deny in an order issued simultaneously with this decision.

## II. Whether the Trial Court Erred in Finding that Yankee Park Demonstrated a Legal Basis for Evicting the Reams from Lots 50 and 68.

The Reams contend that the trial court erred in ordering forfeiture of their leases for Lots 50 and 68. Specifically, the Reams challenge the trial court's determination that they defaulted on their leases for Lots 50 and 68. The Reams further claim that their leases for Lots 50 and 68 could not be involuntarily forfeited without an ongoing and material violation of the Yankee Park Rules and Regulations.

█ In support of their claim relating to their involuntary forfeiture of Lots 50 and 68, the Reams rely on Indiana authority that suggests that a trial court "must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss." *Huber v. Sering,* 867 N.E.2d 698, 707 (Ind.Ct.App. 2007), *trans. denied.* While we acknowledge that forfeitures are rarely, if ever, favored in law, we observe that when, by a reasonable construction, it appears that the contracting parties agreed that a forfeiture should take place upon the failure of one of the parties to the contract to comply with a material part thereof, courts will decree a forfeiture. *Goff v. Graham,* 159 Ind.App. 324, 334, 306 N.E.2d 758, 765 (1974). Here, the evidence demonstrates that the contracting parties, *i.e.,* the Reams and representatives of Yankee Park, agreed that "[u]pon any such termination of this lease, all membership rights of Lessee in Lessor shall terminate and all payments made by Lessee to Lessor for a Membership Certificate shall be retained by Lessor." Appellant's App. vol. 1, p. 77.

The parties further agreed that a failure to comply with the provisions of the lease, including the Rules and Regulations, "shall give the [Board of Directors] the right to declare this lease terminated upon seven (7) days written notice of such default if such default is not corrected within the seven day period and thereafter not repeated." Appellants' App. vol. 1, p. 74. In light of this explicit agreement that a breach of the parties' lease agreement "shall" result in forfeiture, we turn to the question of whether the evidence supports the trial court's determination that a breach occurred warranting the forfeiture of the Reams' interests in Lots 50 and 68.

### A. Default

█ Our determination as to whether the Reams have defaulted on their leases for Lots 50 and 68 by moving the trailer without notification to either the Board of Directors or their neighbors depends upon our interpretation of the leases themselves.

The goal of contract interpretation is to ascertain and give effect to the parties' intent. In interpreting a written contract, the court will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. Thus, we will determine the intent of the parties to a contract by the four corners of the contract.

*Collins v. McKinney,* 871 N.E.2d 363, 372 (Ind.Ct.App.2007) (citations omitted). "Generally, construction of the terms of a written contract is a question of law which we review *de novo.*" *Id.*

The parties' rights and duties relating to the movement of trailers are outlined in the Park Rules and Regulations which were incorporated into the leases at issue. Therefore, we must consider the Park Rules and Regulations in order to interpret the parties' agreement with respect to moving trailers. The Park Rules and Regulations explicitly outline the Park's requirements for moving trailers and indi-

cate that a breach of these requirements will result in the default of the lease. The Park Rules and Regulations provide, in relevant part, as follows:

Moving/Replacing Trailers

1. Written notice must be given 2 weeks prior to any trailer moving in the Park. You must state your intention for the move (new trailer, open lot).

\*　　\*　　\*　　\*　　\*　　\*

3. Your adjacent neighbors must be notified. The Board of Directors will work with everyone in determining lot boundaries and trailer location.

\*　　\*　　\*　　\*　　\*　　\*

5. No trailer may block access areas, designated roadways, or utilities. If an excessive amount of common ground is needed for new trailers, an additional charge may be incurred by the lot/trailer owner.

Appellants' App. vol. 1, p. 186.[3]

The evidence demonstrates that the Reams admitted that they had failed to provide the Board of Directors with written notice of their intentions to move the trailer that was straddling Lots 50 and 68 prior to moving the trailer. The Reams did not share their intention for the move which they stated was to put one trailer on each lot, rather than having one trailer straddling the two lots. The Reams also admitted that they failed to notify their neighbors. Because of the Reams' failure to provide the Board of Directors with notice of their intended move, the Board of Directors was unable to assist in determin-

ing the boundaries of Lots 50 and 68 and the neighboring lots and could provide no input regarding trailer location. The evidence also establishes that the trailer interfered with the use of the paved access road to the lake front and to the frontage lane servicing the lots along the front of the Park. The evidence supports the trial court's finding that the Reams have repeatedly violated the terms of the Rules and Regulations, including evidence that the Reams failed to provide the required notice to both the Board of Directors and their neighbors for two subsequent moves in October and November of 2004. The Reams made no showing suggesting that Yankee Park had waived the requirement that the Reams abide by the notice requirements contained in the Rules and Regulations. This evidence is sufficient to demonstrate that the Reams were in default of the leases for Lots 50 and 68. Thus, the trial court's findings and conclusions are not clearly erroneous in this regard.

**B. Was Termination and Enforcement of the Forfeiture Clause Warranted?**

We must next consider whether the Reams' default of the lease agreements for Lots 50 and 68 warranted termination of the lease agreements rather than an award of mere compensatory damages. *Goff,* 159 Ind.App. at 334, 306 N.E.2d at 765. Our determination as to whether the termination of the leases, *i.e.,* the forfeiture of the Reams' interests in Lots 50 and 68, was warranted depends upon whether

---

**3.** To the extent that the Reams argue that the language "any trailer moving in the park" contained in the Rules and Regulations is ambiguous, we disagree. The words "any" and "in" both have clear universal meanings which are not ambiguous. The word "any" is used to indicate one selected without restriction or specification and is a synonym of the "all" or "each and every." *See* WEBSTER'S

NEW INT'L DICTIONARY 97 (3d 1961). The word "in" is used to indicate inclusion within space, a place, or limits and is a synonym of "inside" or "within." *See* WEBSTER'S NEW INT'L DICTIONARY 1139 (3d 1961). Therefore, the Rules and Regulations clearly mean that notice must be given for all trailers moving within the Park.

the breach is a material one, going to the heart of the contract. *Id.*, 306 N.E.2d at 765. Whether such a total breach exists is to be determined under the facts of the case, and whether the breach is material is itself a question of fact, to be decided by the trier of fact. *Id.*, 306 N.E.2d at 765. In determining whether a breach is material, the following five factors are to be considered:

(A) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(B) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(C) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(D) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

(E) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Collins*, 871 N.E.2d at 375. As we have noted, it is not our function to reweigh the evidence in reviewing the trial court's findings of fact. *Goff*, 159 Ind.App. at 335, 306 N.E.2d at 765.

Before we can consider these factors with respect to the injured party, we must first identify the injured party. We observe that Yankee Park is a cooperative organization made up of individual members, all whom are injured, albeit in varying degrees, by a default or breach by another member. Therefore, each member of Yankee Park, all of whose interests are represented by the Board of Directors, should be considered an injured party with respect to the instant appeal.

### 1. Deprivation of a Reasonably Expected Benefit

Yankee Park presented evidence at trial to support the trial court's determination that the members of Yankee Park have suffered a substantial deprivation of their reasonably expected benefits as a result of the Reams' breach. The evidence demonstrates that by moving the trailer from its original position astride Lots 50 and 68, the Reams have encroached upon the land occupied by and property leased by their neighbors, disrupted their neighbor's negotiated view of the lake, and, most importantly, blocked or limited access to the sole frontage lane servicing the lots along the front of the Park by emergency, utility, and moving vehicles. We conclude that these facts, as found by the trial court, demonstrate that the Reams' actions have not only deprived some of the members of Yankee Park of their reasonably expected benefit to enjoy their property but have also deprived them of their reasonable expectation to the benefit of having direct access to emergency responders.

### 2. Compensation for Deprivation of a Reasonably Expected Benefit

It is unclear whether the members of Yankee Park could be adequately compensated for the portions of the benefit of which they will be deprived by any means other than forfeiture of the Reams' interests in Lots 50 and 68 because it would be difficult for them to prove any monetary losses resulting from the Reams' actions depriving them of their property, their negotiated view of the lake, and their access to emergency responders in the case of an emergency in the Park. Such losses cannot be measured solely in terms of monetary compensation as the peace of mind of knowing that one can receive assistance in the case of an emergency is not quantifiable. The inability to adequately

compensate the members of Yankee Park for the deprivation of their reasonably expected benefit supports a determination that the Reams' breach was material. *See Collins,* 871 N.E.2d at 376 (providing that the fact that it was "not at all clear" that the appellant could be adequately compensated for the part of the benefit of which she had been deprived supported a finding that the breach was material).

### 3. Reams' Loss as Result of Forfeiture

The Reams argue that they will suffer a great loss as a result of the forfeiture because they will not be compensated for the remaining years on their leases for Lots 50 and 68. What the Reams fail to recognize, however, is that they specifically agreed to this forfeiture in the event that their leases for Lots 50 and 68 were terminated. This forfeiture provision in the lease amounts to a liquidated damages clause regarding the Reams' interest in their membership certificates and leases for Lots 50 and 68.

> We are tolerant of provisions within contracts which provide for liquidated damages. Where the sum stipulated in the agreement is not greatly disproportionate to the loss likely to occur, the provision will be accepted as a liquidated damages clause and not as a penalty, but where the sum sought to be fixed as liquidated damages is grossly disproportionate to the loss which may result from the breach, the courts will treat the sum as a penalty rather than as liquidated damages.

*Gershin v. Demming,* 685 N.E.2d 1125, 1128 (Ind.Ct.App.1997) (citations omitted).

In this case, Yankee Park will be forced to resell the membership certificate and release Lots 50 and 68 and will lose membership fees associated with these lots during their vacancy. We are also mindful that Yankee Park incurred the costs of enforcing the leases. In addition, the other members of Yankee Park were also denied the full use and enjoyment of their lots by virtue of the Reams' breach. Taking into account the amount the Reams paid for the 99–year leases and membership certificates (approximately $6,255 for each lot), we cannot say that under these circumstances the forfeiture provision was penal in nature.

### 4. Likelihood Default will be Cured

Nothing in the record suggests that the Reams' default would likely be cured. The evidence supporting the trial court's determination demonstrates that the initial letter notifying the Reams that they were in default of their leases for Lots 50 and 68 was sent by the Board of Directors in June of 2004, and to date, the initial default has not been cured. The Board of Directors has neither waived nor forgiven this default. Two subsequent moves of the trailer by the Reams failed to cure their default because the Reams never gave the required written notice. These moves effectively amounted to repeat violations. Rather than work with the Board of Directors to cure the default, the Reams decided to initiate this suit just two days after the final move. The Reams presented no evidence suggesting that they plan to cure their default, but rather claim that they should be excused from the notice requirement with which they have thus far failed to comply.

### 5. Good Faith Effort to Comport with Standards of Fair Dealing

The Reams have also failed to demonstrate that they have made a good faith effort to comport with the standards of fair dealing. The evidence supporting the trial court's determination demonstrates that the Reams continued to move the trailer without notice to their neighbors or the Board of Directors after they had been notified that failure to give such notice would result in a default of their lease

agreement. The Reams encroached upon the land used and property owned by their neighbors and limited emergency responders' access to some of their neighbors' properties. The Reams also filed a lawsuit a mere two days after their final move in November of 2004.

In light of the evidence presented at trial relating to each of these considerations, we conclude that the Reams' default of their lease agreements for Lots 50 and 68 was material and thus the termination of the Reams' lease agreements for Lots 50 and 68 was warranted. Therefore, the trial court's order terminating the Reams' lease agreements for Lots 50 and 68 and the trial court's enforcement of the default forfeiture provision contained in the lease agreements was not clearly erroneous.

### C. Sufficiency of Notice

■ Additionally, we are unpersuaded by the Reams' claim that even if a material breach existed that would warrant termination of the leases for Lots 50 and 68, such termination would still be prohibited because the Board of Directors failed to provide the Reams with sufficient notice that they were in default. The evidence supporting the findings and conclusions made by the trial court demonstrates that the Board of Directors notified the Reams in a writing dated June 28, 2004, that they were in violation of the Rules and Regulations because they did not submit a plan for board approval before moving their trailer and also because they moved their trailer into a position where access to the sewer collection and holding box is no longer possible. In addition, the Reams received numerous communications, both oral and written, from the Board of Directors regarding the nature of their violation and ways in which they could cure their default. The Reams admitted to receiving these notifications but have yet to cure the original default discussed in the June 28, 2004 letter. The Reams have subsequently committed two further violations of the Rules and Regulations. The Reams received both written and oral notification regarding the second violation in October of 2004. While it does not appear that the Board of Directors sent the Reams written notification regarding the third violation, the notifications regarding the first two violations, neither of which has been cured to date, are sufficient to alert the Reams that they are in default of their lease agreements for Lots 50 and 68.

### D. Sale Rather than Forfeiture

For all of the reasons discussed above, we conclude that the sale of the Reams' remaining interest in Lots 50 and 68 was the remedy agreed to by the parties in the case of the Reams' default of the lease agreements. Therefore, we conclude that the trial court's order terminating the Reams' interest in Lots 50 and 68 by forfeiture rather than sale was not clearly erroneous.

### III. Whether the Trial Court Erred in Denying the Reams' Claim for Equitable Relief to Ensure that the Reams Could Place Trailers on Their Lots as They Saw Fit.

■ The Reams next contend that the trial court erred in refusing their claim for equitable relief, specifically their request that the trial court require Yankee Park to provide specific legal descriptions for each of the lots contained within the Park to secure the Reams' right to place a trailer on each of their remaining lots. With respect to this claim, the trial court found as follows:

24. The Proprietary Leases into which the Reams entered with Yankee Park provide that the Lessees have examined each lot prior to signing the lease and

that each is unconditionally accepted as is.

25. No showing has been made that any space within Yankee Park is subject to a specific legal description. No showing has been made by the Reams that campgrounds and mobile home parks must have specific legal descriptions or sizes for their lots.

26. No evidence was presented to the Court of any prior boundary dispute or lessee complaints about the location of trailers on lots or the size of the lots at Yankee Park at any time during the operation of the same by the Association, except for that of the Reams.

27. Yankee Park has, since its inception, successfully operated as a cooperative association among its members in the absence of specific legal descriptions accompanying any of the leases it grants.

  \*  \*  \*  \*  \*  \*

30. The Plaintiff, Yankee Park, has no basis to declare a default of the Reams[ ] interest in Lots, 30, 31, and 49.

31. Yankee Park has mysteriously operated peacefully up to this point without applying a metes and bounds description to the definition of each lot.

32. Yankee Park has collected money from the Reams for the use of Lot 49.

33. The Reams signed a Proprietary lease on May 17, 2003, to Lot 49, subject to the rights and conditions contained therein, including the availability to hook up to sewer, water, and utilities.

Appellants' App. vol. 2, p. 10. In light of these findings, the trial court concluded that the Reams had accepted each of the lots "as is," including each being without a specific legal description or boundary lines. The trial court further concluded that "Yankee Park cannot now be made to identify specific boundary lines or create legal descriptions for the lots which the Reams had previously accepted as they were when leased." Appellants' App. vol. 2, pp. 10–11. The trial court ordered that "Yankee Park shall ensure that a trailer can be placed on Lot 49, upon request by the owner, and in conformity with their rules and regulations." Appellants' App. vol. 2, p. 12.

The record on appeal demonstrates that the Reams have failed to make any showing that Indiana law requires that campgrounds and mobile home parks provide a specific legal description of each lot contained within the park. Moreover, the record demonstrates that the Reams accepted the generalized description of each lot "as is" when they entered into a lease agreement for each lot with Yankee Park and that the Reams were only entitled to use the lots in accordance with the Park Rules and Regulations. In light of the Reams' acceptance of the lots "as is" and their failure to show that Indiana law requires that campgrounds and trailer parks provide specific legal descriptions of each lot contained within the Park, we conclude that the trial court's findings and conclusions in this regard are not clearly erroneous.

## IV. Whether the Trial Court Committed Reversible Error by Denying the Reams' Claim for Damages.

██ Finally, the Reams claim that the trial court committed reversible error by denying their claim for damages. Specifically, the Reams contend that the Board of Directors, and not they, were in breach of the lease agreements for Lots 50 and 68, and as a result, they were entitled to damages. In support of this contention, the Reams claim that the Board of Directors interfered with the Reams' ability to peaceably enjoy the use of Lots 50 and 68 by ordering to move their trailer from its new position solely upon Lot 68 in the

spring of 2004. The record, however, demonstrates that the Reams first breached the lease agreements by moving the trailer without first providing the required notification. A party first guilty of a material breach of contract may not maintain an action against or recover damages from the other party to the contract. *See Illiana Surgery & Med. Ctr., LLC v. STG Funding, Inc.,* 824 N.E.2d 388, 403 (Ind. Ct.App.2005). The evidence supports a finding that the Reams committed the first material breach of the parties' lease agreements for Lots 50 and 68 by moving the trailer that was situated astride Lots 50 and 68 without first giving proper notice to the Board of Directors and the Reams' neighbors. Moreover, nothing in the record indicates that the Board of Directors ever breached the lease agreements. Therefore, we conclude that the Reams cannot recover damages resulting from any alleged breach of the leases for Lots 50 and 68 by the Board of Directors. Thus, the trial court's order denying the Reams' claim for damages was not clearly erroneous.

## CONCLUSION

Having found no clear error in (1) the trial court's determination that a legal basis existed to terminate and forfeit the Reams' interest in Lots 50 and 68; (2) the trial court's findings and conclusions relating to the Reams' request that the trial court require Yankee Park to provide specific legal descriptions for each of the lots contained within the Park to secure the Reams' right to place a trailer on each of their remaining lots; and (3) in light of the fact that the Reams committed the first material breach of the lease agreements for Lots 50 and 68, and cannot recover damages resulting from any alleged breach of the leases for lots 50 and 68 by the Board of Directors, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

BAILEY, J., concurs.

VAIDIK, J., dissents with opinion.

VAIDIK, Judge, Dissenting.

I respectfully dissent. I agree that the Reams materially breached the terms of their lease and are not entitled to damages or equitable relief, but I disagree with the majority that forfeiture is the appropriate remedy in this case.

The majority notes that the lease's forfeiture provision is akin to a liquidated damages clause. Liquidated damages clauses are generally enforceable where the nature of the agreement is such that when a breach occurs the resulting damages would be uncertain and difficult to ascertain. *Olcott Int'l & Co., Inc. v. Micro Data Base Systems, Inc.,* 793 N.E.2d 1063, 1077 (Ind.Ct.App.2003), *trans. denied.* In determining whether a stipulated sum payable on a breach of contract constitutes liquidated damages or an unenforceable penalty, the facts, the intention of the parties, and the reasonableness of the stipulation under the circumstances of the case are all to be considered. *Id.* If the sum sought by a liquidated damages clause is grossly disproportionate to the loss that may result from a breach of contract, we should treat the sum as a penalty rather than liquidated damages. *Id.*

In June 2004 the Reams first moved their trailer without notice in violation of the Park Rules and Regulations. The trailer subsequently blocked an access road to the lake and a lane servicing the park's front lots. The Reams moved the trailer again the following October. Although this second relocation was sanctioned in a letter from Yankee Park's attorney, counsel was obviously mistaken

and the Reams were still in breach. The trailer continued to block the frontage lane, interfere with emergency vehicle access, and obstruct views of the lake. But in November the Reams returned their trailer to a spot evidently within three feet of its original and proper location. In my view, the damages incurred by the park and its residents are therefore as follows: (1) five months' worth of blocked road access and/or obstructed lake views, (2) any purported impact from the trailer now being three feet from its correct location, and (3) any additional inconvenience to park residents from not receiving notice of the relocations.

On the opposite side of the scale is what the Reams stand to lose through the forfeiture provision. To be sure, the Reams paid only $6255 for their interest in each of the two lots at issue. But the Reams paid in full and acquired 99–year proprietary leaseholds in the subject property. Individual lakefront lots at Yankee Park now cost $20,000 to $30,000. Weighing the loss of two prepaid century-long leases against five months of obstructed road access and lake views along with any other inconvenience noted above, I conclude that the Reams' forfeiture is grossly disproportionate to the totality of the park's damages.[4] I would hold that the lease's forfeiture provision constitutes an unenforceable penalty as opposed to an enforceable liquidated damages clause. I would reverse and remand to award only the above mentioned compensatory damages to the park and its residents, and I would order the lease to be terminated by sale rather than forfeiture, said sale to be directed by the trial court so as to ensure the Reams' rights are adequately protected. *Cf. Cunningham v. Georgetown Homes, Inc.*, 708 N.E.2d 623, 627 (Ind.Ct.App.1999) (holding that cooperative member had "a vested interest in relation to the unit, and she cannot be forced to simply forfeit that interest in the event that the court concludes in its final judgment that [she] did indeed breach the provisions of the Occupancy Agreement"); *Skendzel v. Marshall*, 261 Ind. 226, 234, 301 N.E.2d 641, 646 (1973) ("The vendee has acquired a substantial interest in the property, which, if forfeited, would result in substantial injustice.").

---

4. When assessing each party's losses, the majority takes into account that "Yankee Park incurred the costs of enforcing the leases." Op. at 544. But the costs of enforcing the leases are essentially attorneys' fees. Under the well-settled American rule, attorneys' fees are not recoverable and should not be factored into damages. *See Willie's Const. Co., Inc. v. Baker*, 596 N.E.2d 958, 963 (Ind.Ct. App.1992) ("Attorney's fees are not allowable in the absence of a statute, or in the absence of an agreement or stipulation between the parties.").