Mark BALICKI, Appellant–Respondent,

v.

Darcy BALICKI, Appellee–Petitioner.

No. 45A03–0409–CV–402.

Court of Appeals of Indiana.

Nov. 17, 2005.

Transfer Denied Feb. 2, 2006.

Judy M. Tyrrell, Tabbert Hahn Earnest & Weddle, LLP, Indianapolis, James M. Kapitan, Highland, James A. Harris, Munster, for Appellant.

Debra Lynch Dubovich, Levy & Dubovich, Highland, for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Mark Balicki appeals the trial court's distribution of property and award of maintenance in his divorce from Darcy Balicki. We affirm in part, reverse in part, and remand.

### Issues

Mark raises the following restated issues for our review:

I. whether the trial court properly valued and divided the marital estate;

II. whether the trial court properly ordered Mark to pay Darcy caregiver maintenance because she has custody of their disabled adult son; and

III. whether the trial court properly ordered Mark to pay Darcy's attorney fees.

## Facts

Darcy and Mark were married in 1980. They had three children, including Ryan, born in 1980, who has permanent mental and physical disabilities and cannot take care of himself. The parties established several businesses together while they were married, including T & M Mechanical and KAS Construction. Darcy owned fifty percent of the stock in T & M, and Mark owned fifty percent of the stock in KAS. Third parties owned the other fifty percent interests in those corporations.

In 2001, Darcy petitioned for dissolution of the marriage. In a provisional order, the trial court required Mark to pay the mortgage on the marital residence as well as $4170 per month to Darcy as combined child support and temporary maintenance; the order also required Darcy to pay all household expenses from these funds. Additionally, the order stated that any party using an existing credit card thereafter "shall be responsible for the charges on same." App. p. 31. While the proceedings were pending, Darcy withdrew over $7200 from a marital bank account to pay for certain household expenses. She also used one of the parties' jointly-issued VISA credit cards to charge approximately $40,000 worth of various expenses.

On July 30, 2004, the trial court entered its final dissolution decree and division of marital property. At Darcy's request, it entered special findings of fact and conclusions thereon. It valued the total marital estate at $1,501,371, and awarded Darcy 55.5% of the assets and Mark 44.5%. Among other findings, it valued Darcy's fifty percent interest in T & M Mechanical at $400,000 and awarded that interest to Mark; it valued Mark's fifty percent interest in KAS Construction at $40,000 and also awarded it to Mark. It also included three investment accounts in the marital estate, awarding two of them to Darcy and one of them to Mark. The trial court determined that Mark should pay Darcy $300 per week in caregiver maintenance because she had custody of their disabled son Ryan. It also ordered Mark to pay $12,449 in Darcy's attorney fees, out of a total claim of over $40,000. The findings, conclusions, and marital property division sheet do not mention Darcy's jewelry, which Mark had appraised at $46,990; there is also no mention of Darcy's post-separation use of the VISA card. The trial court, however, did find that Darcy's post-separation withdrawal from the joint bank account was "reasonable and necessary . . . ." App. p. 18. Mark now appeals the trial court's resolution of these issues.

## Analysis

Our standard of review in cases where a party has requested findings and conclusions under Indiana Trial Rule 52(A) is well-settled:

First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of

the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Carmichael v. Siegel,* 754 N.E.2d 619, 625 (Ind.Ct.App.2001) (citations omitted). When requested, a trial court is required to make complete special findings sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. *Nance v. Miami Sand & Gravel, LLC,* 825 N.E.2d 826, 834 (Ind.Ct. App.2005), *trans. denied.* The purpose of such findings and conclusions is to provide the parties and reviewing courts with the theory upon which the case was decided. *Id.*

### I. Valuation and Division of Marital Estate

#### A. Valuation of T & M Mechanical

 Mark first contends that the trial court erred in valuing one-half of T & M Mechanical (representing Darcy's fifty percent interest in the company) at $400,000. We review a trial court's decision in ascertaining the value of property in a dissolution action for an abuse of discretion. *Goossens v. Goossens,* 829 N.E.2d 36, 38 (Ind.Ct.App.2005). If the trial court's chosen valuation is within the range of values supported by the evidence, the court does not abuse its discretion. *Id.* Here, three different appraisers placed three different values on Darcy's interest in T & M, ranging from $145,000 to $433,000. The trial court's chosen valuation of $400,000 falls within this range and, therefore, is sup-

ported by the evidence and not clearly erroneous.

 Mark essentially argues that the trial court should have valued T & M in accordance with the appraiser who valued Darcy's interest in it at $145,000 because this appraiser was the only one who mentioned the concepts of enterprise and personal goodwill in valuing a business. He asserts the trial court was required to exclude the value of any personal goodwill in T & M associated with Mark from the marital estate. The Indiana Supreme Court has held:

> [B]efore including the goodwill of a self-employed business or professional practice in a marital estate, a court must determine that the goodwill is attributable to the business as opposed to the owner as an individual. If attributable to the individual, it is not a divisible asset and is properly considered only as future earning capacity that may affect the relative property division.... [T]o the extent a business or profession has goodwill (or has a value in excess of its net assets) it is a factual issue to what extent, if any, that goodwill is personal to the owner or employee and to what extent it is enterprise goodwill and therefore divisible property.

*Yoon v. Yoon,* 711 N.E.2d 1265, 1269–70 (Ind.1999). In cases following *Yoon,* this court has remanded for reconsideration of business valuations in divorce proceedings where there was evidence presented regarding the possible existence of goodwill in the business that was personal to the one of the spouses, but the trial court's findings and conclusions made no mention of the issue of goodwill. *See Frazier v. Frazier,* 737 N.E.2d 1220, 1225 (Ind.Ct. App.2000); *Bertholet v. Bertholet,* 725 N.E.2d 487, 496–97 (Ind.Ct.App.2000).[1]

1. We disagree with Mark that *Bertholet* was a case in which the evidentiary record was

By contrast, we have declined to remand for reconsideration on the issue of personal goodwill in a business where the parties failed to present competent evidence to the trial court regarding the value of any such goodwill. *See Houchens v. Boschert,* 758 N.E.2d 585, 589 (Ind.Ct.App.2001), *trans. denied.*

In the present case, two appraisers valued T & M at $300,000 and $433,000, respectively. Neither of these appraisers indicated that their valuations included an amount representing goodwill, either enterprise or personal. In fact, in reviewing these appraisers's valuation reports, it appears that they valued T & M strictly on the basis of what 50% of the stock in the company would be worth to an outside investor, not on what it would be worth to either Darcy or Mark personally. The first appraiser used two methods to value T & M, the "market approach" and the "income approach." The report explained, "The notion behind the market approach [is to] provide objective evidence as to values at which investors are willing to buy and sell interests in companies in that industry." App. p. 41. The report continued, "The notion behind the income approach is that the fair market value of a business is a function of the benefit stream accruing to equity owners at an appropriate rate of return that would meet the requirements of a potential investor." *Id.* The second appraiser agreed with these methods of valuation, but disagreed with how they had been applied by the first appraiser.

As for the third appraiser who valued T & M at $145,000, he made no attempt to place a value on any purported personal goodwill attributable to Mark. He did

state that if there was any personal goodwill in the company, it was attributable to Mark. However, when directly asked whether T & M had any value attributable to personal goodwill, the appraiser stated: "Personal goodwill? Personal goodwill *may* well exist, yes. *I have not attempted to compute anything on it.*" Tr. p. 603 (emphases added). Thus, there is no evidence in the record that T & M definitely has value attributable to personal goodwill, and no evidence whatsoever as to what such a value might be. In other words, there is no evidence that any of the three valuations of T & M submitted to the trial court relied in any way upon Mark's personal goodwill in determining those valuations. Under the approach of *Houchens,* no remand for reconsideration of T & M's valuation is required.

Mark asserts, nonetheless, that because the third appraiser mentioned the possibility that there could be some personal goodwill attached to T & M, the trial court was required to calculate what such amount might be and exclude it from the marital estate, pursuant to *Yoon.* He also argues that we should disapprove of *Houchens* as being inconsistent with *Yoon, Bertholet,* and *Frazier;* likewise, he appears to argue that the trial court here was required, sua sponte, to assign a personal goodwill value to T & M and to exclude that value from the marital estate. We disagree with Mark.

The concept of excluding personal goodwill when valuing a business in a divorce proceeding is a well-established principle of Indiana law. It is also a fundamental principle of law that a trial court's findings

---

completely silent on the issue of personal goodwill. In fact, there was evidence that a bail bond business was worth $1.15 million if retained by the husband but only worth $950,000 if retained by the wife. *Bertholet,*

725 N.E.2d at 496–97. Arguably, the difference in value represented the husband's personal goodwill, but the trial court had not addressed this discrepancy in its findings and valued the business at $1.15 million. *Id.*

and conclusions must be based upon evidence found in the record. *See, e.g., Turner v. Freed,* 792 N.E.2d 947, 949 (Ind.Ct. App.2003). Specific to division of marital property, it has been held repeatedly that it is incumbent on the parties to present evidence of the value of property to the trial court, and that trial courts do not err in failing to assign values to property where no evidence of such value was presented. *See Quillen v. Quillen,* 671 N.E.2d 98, 103 (Ind.1996) (holding this court erred in remanding for consideration of two items of marital property allegedly not considered by the trial court where no evidence regarding these items had been presented to the trial court); *Miller v. Miller,* 763 N.E.2d 1009, 1012 (Ind.Ct.App. 2002) ("[T]he burden of producing evidence as to the extent and value of the marital assets rests upon the parties to the dissolution proceeding."); *Lewis v. Lewis,* 638 N.E.2d 859, 860 (Ind.Ct.App.1994) ("The burden of producing evidence concerning the valuation of the assets lies with the parties to the proceedings."); *Scheetz v. Scheetz,* 522 N.E.2d 919, 920 (Ind.Ct. App.1988) ("The parties are bound by the evidence they introduced at trial."); *Church v. Church,* 424 N.E.2d 1078, 1081 (Ind.Ct.App.1981) ("[A]ny party who fails to introduce evidence as to the specific value of the marital property at the dissolution hearing is estopped from appealing the distribution on the ground of trial court abuse of discretion based on that absence of evidence.")

We see no indication that *Yoon* created an exception to the holdings of these cases that applies only to the valuation of businesses that may or may not have some personal goodwill value. In fact, *Yoon* was clear that issues concerning personal goodwill in a business are factual issues. *See Yoon,* 711 N.E.2d at 1270. To resolve factual issues, the parties must submit relevant evidence. Additionally, in *Yoon* there was evidence presented that the husband's medical practice had a substantial value attributable to the "intangible value" of the husband and the trial court had included this amount in its valuation of the practice. *Id.* at 1270–71. There was no such evidence presented here. We conclude that if a party wishes to exclude personal goodwill from a business's valuation in a dissolution proceeding, they must submit evidence of its existence and value to the trial court by ensuring that their chosen expert provides proof of such existence and value.[2]

Here, neither Darcy nor Mark presented any evidence regarding the value of any personal goodwill in T & M. Mark's appraiser did acknowledge the distinction between personal and enterprise goodwill and believed that if there was any personal goodwill attached to T & M it would have belonged solely to Mark. Nowhere, however, did the appraiser place a value on that purported personal goodwill; in fact, he never said that there necessarily was such goodwill. Moreover, Mark did not question the other two appraisers regarding whether any part of their valuation includ-

---

2. *Houchens* and our holding today do not in any way revive the holding of *Porter v. Porter,* 526 N.E.2d 219 (Ind.Ct.App.1988). That case held, "a professional practice's goodwill value may be included in the marital estate for purposes of property distribution pursuant to a dissolution decree." *Id.* at 225. *Yoon* held, "To the extent that *Porter* suggests that both personal and enterprise goodwill are to be included in the value of a business or profes-

sional practice in a dissolution, it is disapproved." *Yoon,* 711 N.E.2d at 1269. *Porter* and *Yoon* both were cases in which there was evidence presented of goodwill value in a business and *Yoon* dictates what should happen when there is evidence of a spouse's personal goodwill that increases a business's value; *Houchens* and this case are ones in which there was no such evidence presented.

ed or relied upon goodwill; neither their written reports nor their testimony mentioned goodwill at all, either enterprise or personal.

■ The trial court could not assign a value to Mark's purported personal goodwill associated with T & M with no evidence in the record to guide such a valuation. "Where the parties fail to present evidence as to the value of assets, it will be presumed that the trial court's decision is proper." *Quillen,* 671 N.E.2d at 103. If the trial court here had placed a value on Mark's purported personal goodwill associated with T & M and excluded that value from the marital estate, it would have opened itself up to reversal at Darcy's insistence because there is no evidence in the record that would have supported any such finding. *Cf. Thompson v. Thompson,* 811 N.E.2d 888, 917 (Ind.Ct.App.2004), *trans. denied* ("A trial court abuses its discretion when there is no evidence in the record supporting its decision to assign a particular value to a marital asset."). The trial court did not err in its valuation of T & M and remand for consideration of its purported personal goodwill value is not required.

### B. Valuation of KAS Construction

Mark also asserts that the trial court erred in valuing his fifty percent interest in KAS Construction at $40,000. The valuation of property in a dissolution action is reviewed for an abuse of discretion, which does not occur so long as the trial court's chosen valuation is within the range of values supported by the evidence. *Goossens,* 829 N.E.2d at 38.

■ Only one appraiser attempted to value KAS Construction. That appraiser's final conclusion was that the business as a whole was worth $47,000. However, the appraiser also believed that the value of Mark's fifty percent interest in the compa-

ny, after considering lack of control and lack of marketability discounts, was $17,500. Thus, the trial court's valuation of Mark's interest in KAS at $40,000 is outside the range of values supported by the evidence.

Darcy contends that the trial court's higher valuation, perhaps reflecting the entire value of the company, is justified because there was evidence presented that Mark allegedly treated KAS as his personal financial "cookie jar." Appellee's Br. p. 17. The trial court, however, made no finding that it was assigning more than fifty percent of the value of KAS to Mark for this or any other reason. It simply assigned a value of $40,000 without explanation. The evidence does not support this finding and, therefore, it is clearly erroneous. We remand for further consideration of the proper value of Mark's fifty percent interest in KAS.

### C. Exclusion of Darcy's Jewelry

■ Next, Mark argues that the trial court erred in not including the appraised value of Darcy's jewelry, $46,990, in the marital estate. Indiana Code Section 31–15–7–4(a) provides:

In an action for dissolution of marriage under IC 31–15–2–2, the court shall divide the property of the parties, whether:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

 (A) after the marriage; and

 (B) before final separation of the parties; or

(3) acquired by their joint efforts.

This statute requires all property to be considered in the marital estate. *Fobar v. Vonderahe,* 771 N.E.2d 57, 60 (Ind.2002). With certain limited exceptions, the "one-

pot" theory of Indiana family law specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award. *Thompson*, 811 N.E.2d at 912. "Only property acquired by an individual spouse after the final separation date is excluded from the marital estate." *Id.*

■■■ Darcy never challenged Mark's valuation of her jewelry, nor claimed that it was acquired after their final separation. Darcy argues on appeal that the trial court was correct in excluding the jewelry in calculating the marital estate because there was other personal property owned by the parties, such as furniture, that was never appraised and not included in the marital estate's valuation. The relevance of this argument is unclear, and it does not change the fact that the jewelry was, in fact, appraised and submitted by Mark, without objection from Darcy, as marital property subject to division.

We discern no reason why the value of this jewelry would not have been considered as a marital asset subject to division. Although the trial court may have wished to allow Darcy to keep this jewelry for herself, its value should have been included in the marital estate and considered by the trial court in fashioning an equitable division of property. Allowing Darcy to keep all of the jewelry without a corresponding award of property to Mark lowers the percentage of the martial estate awarded to Mark. The trial court erred as a matter of law on this issue. We remand for inclusion of the value of the jewelry in the marital estate and recalculation, if necessary, of the distribution of property.

### D. Post–Separation Use of Joint Account

■■■ Mark argues that the trial court should have awarded Darcy less of the marital estate to account for the uncontested fact that, post-separation, she withdrew over $7200 from a joint bank account to pay for certain personal expenses. Mark invokes "dissipation" as the basis for this argument. However, he failed to provide a definition of the term. Dissipation of marital assets includes frivolous and unjustified spending of marital assets. *Goodman v. Goodman*, 754 N.E.2d 595, 598 (Ind.Ct.App.2001). The test for dissipation is whether the assets were actually wasted or misused. *Id.* Dissipation generally involves the use or diminution of the marital estate for a purpose unrelated to the marriage and does not include the use of marital property to meet routine financial obligations. *Coyle v. Coyle*, 671 N.E.2d 938, 943 (Ind.Ct.App. 1996). Trial courts may consider evidence of either pre- or post-separation dissipation. *See Sloss v. Sloss*, 526 N.E.2d 1036, 1040 (Ind.Ct.App.1988).

■■■ Here, the trial court specifically found that the withdrawal of funds was "reasonable and necessary ...." App. p. 18. Mark does not challenge this finding. There is evidence in the record that Darcy used these funds to pay homeowner's and automobile insurance premiums. This supports the finding that the use of funds was "reasonable and necessary." A "reasonable and necessary" use of marital funds to pay for routine financial obligations does not constitute dissipation of assets. *See Coyle*, 671 N.E.2d at 943. We reject Mark's argument to the contrary.

### E. Post–Separation Use of VISA Card

■■■ In addition to the funds directly used by Darcy, Mark notes that the trial court's findings and conclusions make no mention of the fact that Darcy charged approximately $40,000 on a VISA card during the parties's separation. This matter was raised via a contempt petition Mark filed after the final dissolution hearing had been held, but before the trial

court entered its dissolution decree. At the conclusion of the hearing, Mark agreed to pay several thousand dollars toward the VISA balance from his own separate funds that represented medical and dental bills for the parties's children. As for the remainder of the balance, it was agreed that it would be paid from the parties's joint trust account at Mercantile Bank. The trial court stated that it would "take under advisement ... how to allocate against whose property division it's going to go" after reviewing the VISA statements. Tr. p. 851–52.

The trial court's dissolution decree made no mention of the VISA issue, nor can we find any other order by the trial court that did so. It may be that the trial court believed it was unnecessary to address this issue because it awarded Darcy the entire remaining balance in Mercantile Bank trust account. Thus, the total value, and Darcy's percentage share, of the marital estate would have been reduced by the amount apparently already used to pay off the VISA.[3] The findings and conclusions as they are currently written, however, are unclear on this point, and we cannot be certain that the trial court actually addressed it. We remand for clarification on this issue.

### F. Inclusion of Investment Accounts

Mark argues that the trial court improperly included three investment accounts in the marital estate. He contends that two of the accounts were funded entirely post-separation and that the third account does not exist. The first two accounts were IRAs funded by T & M Mechanical, one each for Darcy and Mark; the third account is allegedly held at AG Edwards.

With respect to the two IRAs, even if we were to assume it was error to include them in the marital estate, Mark invited that error. The doctrine of invited error is grounded in estoppel and precludes a party from taking advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct. *Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 133 (Ind.2005). Here, Mark's proposed division of the marital property listed his T & M IRA as a marital asset subject to division. Clearly, the trial court was entitled to rely on Mark's representation that this IRA was a marital asset when he identified it as such. The trial court's valuation for this asset is significantly higher than Mark valued it, but he makes no claim of error in valuation, only its inclusion in the marital pot. Additionally, although Darcy's T & M IRA is not listed on Mark's asset list, it is included on Darcy's asset list alongside Mark's IRA. Mark did not object to the introduction of this asset list into evidence and never contended that either IRA should be excluded from the marital estate. Under the circumstances, Mark cannot seek reversal or reconsideration of the property distribution with respect to the two IRAs.

As for the third investment account, purportedly located at AG Edwards and worth $55,000, it also is listed on Darcy's asset list, to which Mark did not object. Even if this account does not exist, however, errors in the division of marital assets may be considered harmless. *Elkins v. Elkins*, 763 N.E.2d 482, 487 (Ind. Ct.App.2002). The trial court awarded this purported third account entirely to

---

**3.** If the amount apparently used to pay off the VISA is added to the trial court's values for the total marital estate and Darcy's share of it, her percentage share of the estate increases by approximately one percent.

Darcy.[4] Thus, if this account does not exist, it is entirely to Darcy's detriment. Its non-existence would alter the makeup of the marital estate and distribution of property such that Mark would receive an identical sum of assets, but this would equate to nearly a two percent greater share of the marital estate (46.2% as opposed to 44.5%). Inclusion of this account in the marital estate and its award solely to Darcy is entirely harmless to Mark, if in fact it does not exist.

## II. Award of Caregiver Maintenance

 Mark next argues that the trial court erred in awarding maintenance to Darcy. In the absence of an agreement between the parties, the trial court's authority in ordering maintenance is restricted and limited to three options: incapacity maintenance for a spouse who cannot support him or herself, rehabilitative maintenance for a spouse who needs additional education or training before seeking a job, and caregiver maintenance for a spouse who must care for an incapacitated child. See Cannon v. Cannon, 758 N.E.2d 524, 525–26 (Ind.2001) (citing Voigt v. Voigt, 670 N.E.2d 1271, 1276–77 (Ind.1996)). These three options are provided by statute, Indiana Code Section 31–15–7–2. In order to award maintenance, a trial court must make the findings required by the statute. See Cannon, 758 N.E.2d at 526. With respect to caregiver maintenance, the statute provides:

> If the court finds that:
> (A) a spouse lacks sufficient property, including marital property apportioned to the spouse, to provide for the spouse's needs; and
> (B) the spouse is the custodian of a child whose physical or mental inca-

pacity requires the custodian to forgo employment;

> the court may find that maintenance is necessary for the spouse in an amount and for a period of time that the court considers appropriate.

Ind.Code § 31–15–7–2(2).

 Here, the trial court made detailed findings that Ryan indeed is severely disabled, that Darcy cares for him, and that this substantially limits Darcy's ability to work. The evidence clearly supports these findings. However, these findings only address part (B) of what is required to award caregiver maintenance. The statute also requires courts under part (A) to consider other property, including the property awarded in the dissolution, available to the spouse seeking caregiver maintenance and whether that property is sufficient to provide for the spouse's needs. The trial court's current findings make no mention of this factor. Before it could award caregiver maintenance, the trial court was required to consider, and make a finding, that the property award Darcy received and other property or income available to her is not enough to counterbalance her limited employment prospects caused by caring for Ryan. We remand for further consideration of this issue and either the entry of additional findings that would support an award of caregiver maintenance or reversal of that award.

## III. Award of Attorney Fees

 Mark's final argument is that the trial court erroneously ordered him to pay a portion of Darcy's attorney fees. When reviewing an award of attorney fees in a dissolution action, we reverse the trial court only for an abuse of discretion. Fo-

---

4. Mark's assertion in his reply brief that the trial court awarded this account to him is plainly refuted by the trial court's sheet listing its item-by-item distribution of the marital assets. See App. p. 27.

bar v. Vonderahe, 756 N.E.2d 512, 517 (Ind.Ct.App.2001), *summarily aff'd in relevant part*, 771 N.E.2d 57, 58 n. 1 (Ind. 2002). When deciding whether to make such an award, courts should consider the parties's relative resources, ability to engage in gainful employment, and ability to earn an adequate income. *Id.* "Consideration of these factors furthers the legislative purpose behind the award of costs and attorney fees under Indiana Code Section 31–15–10–1, which is to provide access to an attorney to a party in a dissolution proceeding who would not otherwise be able to afford one." *Id.*

■ The trial court here found, "When the marital estate is divided between the parties, it appears that both will have sufficient liquid assets with which to pay their respective attorney fees. Notwithstanding, the Court is aware of [Mark's] greater earning power, and believes that he should contribute to [Darcy's] attorney fees." App. p. 23. Elsewhere, in calculating Mark's child support obligation, the court found that Mark had a weekly income of $4763 per week, while Darcy had an imputed income of only $200 per week. This vast disparity in the parties's earnings supports the trial court's finding that Mark should pay a portion of Darcy's attorney fees. *See Augspurger v. Hudson*, 802 N.E.2d 503, 512 (Ind.Ct.App.2004) (holding that although wife received more marital assets than husband, vast disparity in income of the wife, $90 per week, and husband, $1700 per week, justified award of attorney fees to wife). We affirm the trial court on this issue.

## Conclusion

Because of the number of issues in this case, we carefully delineate the effect of our opinion. We affirm the trial court's valuation of T & M Mechanical, its decision not to penalize Darcy for using joint marital funds to pay post-separation expenses, its inclusion of the two IRAs and the AG Edwards account in the marital estate, and its partial award of attorney fees to Darcy. We reverse the trial court's distribution of marital property, however, and must remand for the purpose of reconsidering the valuation of KAS Construction and including Darcy's jewelry in the marital estate and recalculating the distribution of property accordingly. We also remand for explanation as to how the trial court resolved the issue of Darcy's post-separation use of the jointly-issued VISA card. Finally, we remand for further consideration of the issue of caregiver maintenance. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

CRONE, J., and NAJAM, J., concur.