# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 11 2015, 6:05 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE

Matthew Carie
Vincennes, Indiana

ATTORNEY FOR APPELLEE

Jill Doggett
Hart Bell, LLC
Vincennes, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Matthew R. Carie,

*Appellant-Petitioner,*

v.

Jennifer Carie, f/k/a Jennifer Wade, n/k/a Jennifer Andrews,

*Appellee-Respondent.*

August 11, 2015

Court of Appeals Case No.
42A05-1409-DR-419

Appeal from the Knox Superior Court.
The Honorable W. Timothy Crowley, Judge.
Cause No. 42D01-1304-DR-84

**Sharpnack, Senior Judge**

# Statement of the Case

Matthew R. Carie appeals from the trial court's order resolving the division of property and debts in an action dissolving his marriage to Jennifer Carie.[1] We affirm.

# Issues

Matthew presents the following issues for our review:

I.  Whether the trial court abused its discretion by failing to include marital liabilities in the marital pot.

II. Whether the trial court abused its discretion in its valuation of certain marital assets.

# Facts and Procedural History

After Matthew and Jennifer began dating, she moved into a home Matthew had purchased prior to their relationship. They lived together there until the date of their separation. Matthew continues to reside in the home. At issue in this appeal is the trial court's resolution of contested property division issues.

Matthew purchased what would later become the marital residence in 2004 for $100,000, taking out a mortgage for the entire purchase price. Jennifer moved into the house in 2008. Matthew and Jennifer were married on October 10, 2010, a little more than a year after the birth of their child. Jennifer decorated

---

[1] Jennifer Carie had her maiden name, Jennifer Wade, restored at the conclusion of the August 29, 2013 hearing. By the time of the final hearing in this matter Jennifer had remarried and was known as Jennifer Andrews. For ease of reference we will refer to her as Jennifer in this opinion.

the home, and with the help of her grandparents, painted the cabinets in the kitchen and replaced flooring in the home. Matthew and Jennifer also made improvements to the home such as hanging shutters, landscaping the property, and laying brick edging along the walkways. Matthew made the mortgage payments on the home. At the time the parties separated on March 23, 2013, the remaining obligation on the mortgage was $79,000.00.

[5] Prior to their marriage, but while the parties were living together, Matthew paid $5,219.25 for a new roof that was installed on the house. During the marriage, a pole barn costing $20,000.00 was built on the property after both parties agreed to do so. Matthew borrowed money for the price of the pole barn from a 401K he had with his employer, which at that time was Peabody Energy. When the coal mine was closed, Matthew's loan was converted to a withdrawal. Matthew testified that the tax consequences for the conversion of the loan were $8,321.00 in federal tax penalties and $748.00 in state tax penalties.

[6] Two vehicles were purchased during the marriage. The value of the Ford F150 truck was $6,048.00 and the value of the 2009 Chevy Traverse was $17,108.00 at the time of separation. Matthew traded in both vehicles in order to purchase another vehicle after the parties had separated. Matthew purchased a Rhino ATV with a fair market value of $8,000.00 during the marriage, and the outstanding indebtedness on the ATV was $7,600.00.

[7] Both parties had retirement accounts. Jennifer's retirement account benefits were $2,000.00 total and Matthew's 401K benefits increased in value during the course of the marriage.

[8] Matthew filed a petition for dissolution of marriage on April 8, 2013. A provisional hearing was held and the trial court issued its provisional order. On August 29, 2013, the trial court conducted a bifurcated hearing to issue the decree of dissolution and the parties began their presentation of evidence on the contested issues regarding property division. The final hearing was held on April 3, 2014, at which time the parties concluded the presentation of evidence. The trial court's June 30, 2014 order resolved child-related issues which are not the subject of this appeal. However, Matthew appeals from the trial court's order issued on July 7, 2014, resolving the division of property and debts.

# Discussion and Decision

## Standard of Review

[9] When a trial court enters findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), as the reviewing court we are prohibited from setting aside the trial court's judgment unless it is shown to be clearly erroneous. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). We give due regard to the trial court's opportunity to judge the credibility of the witnesses. *Id.* Accordingly, a trial court's judgment is clearly erroneous only if its findings do not support its conclusions of law or its conclusions of law do not support its

judgment. *Id.* The findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.*

# I. The Marital Pot

Matthew contends that the trial court abused its discretion by failing to include certain liabilities in the marital pot when dividing the property and assets. There are two steps involved in the process of dividing marital property. *Thompson v. Thompson*, 811 N.E.2d 888, 912 (Ind. Ct. App. 2004), *trans. denied.* A trial court must determine what property must be included in the marital estate. *Id.* The trial court is required by statute to divide the property of the parties whether owned by either spouse before the marriage, acquired by either spouse in his or her own right after the marriage and before the final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a) (1997). "With certain limited exceptions, this 'one-pot' theory specifically prohibits the exclusion of any asset from the scope of the trial court's power to divide and award." *Thompson*, 811 N.E.2d at 912. Only the property acquired by one of the spouses after the final separation date is excluded from the marital estate. *Id.*

Once the trial court has determined what constitutes marital property, it must then divide the marital property starting with the presumption that an equal split is just and reasonable. *Id.* (citing Ind. Code § 31-15-7-5 (1997)). If a court chooses to deviate from that presumption, then it must state why it did so. *Id.* at 913. The party challenging the trial court's division of marital property must

overcome the strong presumption that the trial court considered and complied with the applicable statute. *Id.*

## A. Vehicle Loans

[12] Matthew claims that the trial court abused its discretion by assigning only the fair market value of the vehicles to him without offsetting that amount by the amount left to be paid on the vehicle loans. Matthew testified to and submitted Kelley Blue Book values for the vehicles reflecting fair market values of $6,048.00 and $17,108.00 for the Ford F150 and the Chevy Traverse respectively, values to which Jennifer ultimately agreed were appropriate.

[13] He testified that the remaining amount of indebtedness on the vehicle loans was $20,000.00 for the Chevy Traverse and $9,000.00 for the Ford F150. However, he also testified that since the separation and filing of the petition he traded in both vehicles in order to buy a different vehicle. Although he testified that he suffered a loss when trading in those vehicles, he could not testify about the amount of the loss and did not present documentation about it. In Matthew's final argument he subtracted the balance due on each of the vehicle loans from the fair market value of each when suggesting a total value of $8,057.00 to be assigned to him for the vehicles.

[14] The trial court's valuation of the vehicles using their fair market value was within the range of evidence presented at the hearings. Matthew did not establish the amount of loss he claims he suffered when trading in the vehicles. There is no abuse of discretion where the trial court's valuation is within the

range of values supported by the evidence. *Weigel v. Weigel*, 24 N.E.3d 1007, 1011-12 (Ind. Ct. App. 2015) (citing *Balicki v. Balicki*, 837 N.E.2d 532, 536 (Ind. Ct. App. 2005)).

### B. Tax Penalties

[15] Next, Matthew argues that the trial court abused its discretion by failing to include the tax penalties Matthew suffered when the $20,000.00 loan he took against his 401K was converted to a withdrawal. He testified that the consequences of that conversion resulted in $8,321.00 in federal tax penalties and $748.00 in state tax penalties for a total of $9,069.00. Matthew claims that Jennifer should have to bear her half of those penalties.

[16] Matthew asked the trial court to assign $51,614.00 as growth to the 401K account during the marriage, while Jennifer asked the trial court to assign a value of $53,985.43. The trial court's valuation was $51,600.00. We find Matthew's proposed valuation was faulty in some respects. He used an incorrect starting point for determining the growth of the account, and he failed to take into consideration a pre-marital loan he had taken against that account, which is reflected in that statement. His exclusion of the percentage of growth from pre-marital contributions to the account was therefore also based on a faulty calculation. The trial court's valuation of $51,600.00, which is slightly under Matthew's proposed valuation, however, is within the range of the evidence presented to the trial court and would appear to implicitly account for Jennifer's share of the tax penalty obligation. We find no abuse of discretion here.

## II. Valuation of Marital Assets

[17] Matthew claims that the trial court erred by determining that the value of the marital home had increased by $30,000.00 during the course of the marriage. We review a trial court's valuation of marital assets for an abuse of discretion and will reverse the trial court's decision only for an abuse of that broad discretion. *Granzow v. Granzow*, 855 N.E.2d 680, 685 (Ind. Ct. App. 2006). If there are sufficient evidence and reasonable inferences to support the valuation, there is no abuse of discretion. *Id.* We do not reweigh the evidence and will consider the evidence in the light most favorable to the judgment. *Id.*

[18] Matthew testified that he purchased the home in 2004 for $100,000.00 and obtained a mortgage for the amount of the purchase price. He testified that the remaining obligation on the mortgage was $79,000.00. The parties testified about the purchase price of $20,000.00 paid to build the pole barn, which was erected on the marital property during the marriage. Further, Matthew testified that in June of 2010, when Matthew and Jennifer were cohabiting prior to marriage, Matthew replaced the roof at a cost of $5,219.25. Jennifer testified, and Matthew did not disagree, that during the marriage, she cooked, cleaned, decorated, and maintained the house. She testified that both she and Matthew improved the home by remodeling and landscaping. Jennifer's grandparents helped the two by giving them new kitchen flooring as a Christmas present. They also helped Jennifer with painting projects at the house.

[19] The trial court "shall divide the property of the parties, whether owned by either spouse before the marriage, acquired by either spouse in his or her own

right after the marriage and prior to final separation of the parties, or acquired by their joint efforts. . . ." Ind. Code § 31-15-7-4 (1997). The new roof increased the value of the marital residence. To the extent the trial court included that value in its determination, we find no abuse of discretion. *See Larkins v. Larkins*, 685 N.E.2d 88, 92 (Ind. Ct. App. 1997) (no abuse of discretion to award former wife one half of equity in marital residence including appreciation in valuation during period of pre-marital cohabitation).

[20] The trial court asked the parties to submit written final arguments in lieu of closing arguments and proposed findings of fact and conclusions thereon. In his, Matthew argued that the only evidence regarding the valuation of the marital residence was the assessed value of the house, land, and barn at $77,000.00. He argued that given the current balance on the mortgage of $86,137.00, the marital residence had a negative value of $8,437.00, to which he would be entitled to half, or a negative $4,218.50. In hers, Jennifer argued that the home was purchased for $100,000.00 with a mortgage pay off amount of $78,488.00 as of the date of the filing of the petition. In addition to the new roof and the pole barn, she cited her nonmonetary contributions to the improvement of the home in arriving at a value of $140,000.00. She argued that the increased value of the marital residence of $140,000.00, less the balance she assigned the mortgage pay off, $78,488.00, resulted in an increase in value of $61,512.00, to which she was entitled to half, or $30,756.00.

[21] The range of evidence of the increased value of the marital residence was therefore a negative $8,437.00 (Matthew's valuation) and $61,512.00 (Jennifer's

valuation). We find that the trial court's assignment of $30,000.00 as the increased value of the marital residence is within the range of the evidence and does not constitute an abuse of discretion. *Weigel*, 24 N.E.3d at 1011-12.

# Conclusion

[22] In light of the foregoing, we affirm the trial court's judgment.

[23] Affirmed.

Kirsch, J., and Bradford, J., concur.