## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 18 2020, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

APPELLEE PRO SE

Fran Cohen
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Marriage:

Menashi Cohen,

*Appellant-Respondent,*

v.

Fran Cohen,

*Appellee-Petitioner.*

November 18, 2020

Court of Appeals Case No.
19A-DR-2192

Appeal from the
Clinton Circuit Court

The Honorable
Bradley K. Mohler, Judge

Trial Court Cause No.
12C01-1407-DR-577

**Kirsch, Judge.**

[1] Menashi Cohen ("Husband") appeals the trial court's dissolution decree dissolving his marriage to Fran Cohen ("Wife"). He raises two issues on appeal:

I. Whether the trial court erred by concluding Wife is entitled to a $1,000,000.00 reimbursement; and

II. Whether the trial court erred by valuing the parties' business known as Deal Zone LLC ("Deal Zone") at $1,000.00 when Wife testified that Deal Zone had an annual income of more than $700,000.00.

On cross appeal, Wife raises two issues, which we consolidate and restate as whether the court erred by having Husband's attorney fees paid from marital assets.

We affirm in part, vacate in part, and remand.

## Facts and Procedural History

Husband and Wife were married on September 2, 1984. *Tr. Vol. 2* at 16. At that time, Husband was a professor at Purdue University in West Lafayette, Indiana. *Tr. Vol. 3* at 29. In 1992, Husband and Wife created CD Land, Inc. ("CD Land"), a successful retailer of CDs, video games, electronics, guitars, t-shirts, posters, and other related items. *Tr. Vol. 2* at 84-85, 157. During the 1990s, CD Land generated income of more than $500,000.00 per year. *Id*. at 157.

In September 2002, Husband and Wife bought a home in Beverly Hills, California for approximately $3,100,000.00 ("the California residence"). *Id*. at 17-18. The California residence was used as the marital residence until

September 2013 when Wife moved back to Indiana. *Id*. at 72-73. Husband moved back to Indiana shortly thereafter. *Id*. at 227.

[6] In 2013, Husband and Wife established Deal Zone which sold merchandise similar to the merchandise sold by CD Land. *Appellant's App. Vol. 2* at 19; *Tr. Vol. 2* at 84, 89. After both parties moved to Indiana in 2013, Wife took over operations for Deal Zone, and Husband handled operations for CD Land. *Id*. at 84-86, 89-94. Wife did not share any income from Deal Zone with Husband after she took over operation of that business. *Id*. at 94. In 2017, Deal Zone reported income of more than $700,000.00. *Id*. at 153.

[7] In January 2016, the parties began using the California residence as a rental property. *Id*. at 236-37. The property generated rental income in the amount of $16,800.00 per month between February 2016 and August 2017, and a security deposit in the amount of $33,000.00 *Id.* at 156; *Conf. Ex. Vol. 8* at 147. On May 30, 2018, the parties obtained a new tenant and rented the Beverly Hills property for $14,700.00 per month. *Conf. Ex. Vol. 7* at 118. Wife kept all rental income generated from the California residence. *Appellant's App. Vol. 2* at 16.

[8] Wife filed a petition for dissolution of marriage on July 16, 2014. *Appellant's App. Vol. 2* at 2. During discovery in the dissolution matter, Wife did not disclose Deal Zone's assets and income, and Husband was unaware of the 2017 income of $700,000.00 until Wife testified at the final hearing. *Tr. Vol. 3* at 9; *Appellant's App. Vol. 2* at 24 n.2.

[9]     During the pendency of the dissolution proceedings after the parties' separation, Wife paid a majority of the expenses related to the California residence, including the mortgage and utilities. *Tr. Vol. 2 at 27-28; Tr. Vol. 3 at 41-42.* Wife testified that besides rental income from the California residence, her "only source of income" was Deal Zone. *Tr. Vol. 2 at 96.*

[10]    A three-day fact-finding hearing was held on February 16, 2018, May 11, 2018, and July 17, 2018. *Id.* at 7-8. Wife testified that from July 16, 2014, the date she filed her petition for dissolution, to the date of the final hearing, she had spent approximately $1,500,000.00 for expenses related to the California residence: a first mortgage, a second mortgage, monthly expenses, and repairs. *Id*. at 34, 60, 154.

[11]    Wife explained at trial that she presented no evidence of the value of Deal Zone because it had no market value. *Id.* at 6-7. Wife said Deal Zone had no inventory, stating, "The inventory doesn't work much. The same inventory [Husband] has with CD Land." *Id.* at 161. On cross examination, Husband's attorney asked Wife about a $90,000.00 account receivable allegedly owed to Deal Zone at the end of 2016, but Wife said she did not know anything about that account receivable. *Id.* at 180. Wife testified that any goodwill in Deal Zone was personal goodwill, not enterprise good will. *Id*. at 6.

[12]    During his testimony, Husband explained that he did not present a valuation of Deal Zone because during discovery Wife did not provide information that would have helped him present a proposed valuation of Deal Zone to the trial

court. *Tr. Vol. 3* at 9-10, 49. The trial court acknowledged that Wife failed to provide Husband this information. *Appellant's App. Vol. 2* at 24 n.2.

[13] On April 16, 2019, the trial court issued the decree of dissolution of marriage. *Appellant's App. Vol. 2* at 11. Among other things, the trial court found as follows:

**Findings of Fact**

. . . .

6. [T]hat an equal division of property and debts is appropriate. . . .

8. That the parties' primary asset . . . is [the] California residence. The California residence was purchased in September 2002 for $3,100,000.

. . . .

10. That the California residence has been in and out of foreclosure and/or mortgage default.

. . . .

15. That at the time of the divorce, the California residence had a first mortgage and note owed to Ocwen in the amount of $2,002,046 and a second mortgage and note owed to Levy Affiliated in the amount of $900,000.

16. That during the divorce case, the parties paid mortgage payments, expenses, and repairs for the California residence. [Wife] paid the majority of such payments and expenses.

. . . .

18. That the parties rented the California residence from February 2016 through August 2017, receiving rent of $288,000. [Wife] kept the rental income.

. . . .

29. That in May 2017, [Husband] received $307,500 for his 20% interest in A+ Storage. . . . [Husband] distributed $65,000 from such proceeds to his family. . . . The remaining $242,500 was placed in [Husband's] counsel's trust account.

35. That the parties own CD Land, Inc., an Indiana corporation established in 1992. . . . CD Land is a retail music and electronics store. No value of the business or its inventory was provided. CD Land reported a net loss of $40,916 for 2014. . . . CD Land reported income of $1,298 for 2015. . . . CD Land reported income of $1,199 for 2016. . . . [Husband] received the income from CD Land during the divorce.

36. That the parties own Deal Zone, LLC, an Indiana limited liability company established in 2013. . . . No value of the business or its inventory was provided. Deal Zone reported income of $102,852 in 2015. . . . Deal Zone reported income of $162,976 in 2016. . . . [Wife] testified that Deal Zone earned income of approximately $700,000 in 2017. [Wife] received the income from Deal Zone during the divorce.

. . . .

48. That [Wife] owes her attorney, Gregg S. Theobald, attorney fees in the amount of $9,026. 49. That [Husband] owes his attorney, Brian W. Walker, attorney fees in the amount of $32,222.

. . . .

**Conclusions of Law**

. . . .

7. That [Husband] shall retain CD Land, Inc., including all assets and inventory.

8. That [Wife] shall retain Deal Zone, LLC, including all assets and inventory.

. . . .

17. That the proceeds from the sale of personal property outlined . . . above and the remaining funds ($32,500) held in Husband's counsel's trust account shall be used to pay attorney fees for Gregg Theobald, Brian Walker, and Ball Eggleston as outlined . . . above. . . .

18. That the California residence shall be sold at the earliest possible date. Pending the sale, the Wife shall receive all rental proceeds from the California residence and shall apply to them the first mortgage, second mortgage, real estate taxes, and necessary maintenance and repairs. . . . [F]rom the sale proceeds, [Wife] shall receive the sum of $1,000,000 to reimburse her payment of mortgage payments and expenses for the California

residence while the case was pending.[1] . . . . Finally, the remaining sale proceeds shall be equally divided by the parties.

In the event that the sale proceeds are insufficient to pay [Wife] the reimbursements outlined above, [Wife] shall be entitled to a judgment in her favor and against the Husband for such delinquency amount.

. . . .

21. That the parties shall equally divide the proceeds of any pending lawsuits . . . .

22. That the parties shall equally be responsible for judgments entered against them in any pending lawsuits.

*Appellant's App. Vol. 2* at 13-16, 18-20, 22-25.

[14] Husband timely filed a motion to correct error, which the trial court denied on August 20, 2019. *Id.* at 34. Husband now appeals. We will provide additional facts as necessary.

---

[1] . . . The parties do not dispute that [Wife] made payments to keep the California residence from foreclosure. Funds for the payments came from the rent [Wife] received, from Deal Zone, and from the funds in Husband's counsel's trust fund. . . . [Wife] failed to provide the Court, or Husband's counsel, with any records to verify Deal Zone's earning or value. . . . After considering all such factors, the Court believes a reasonable reimbursement to the wife is warranted, albeit less than the $2,000,000+ to which she believes she is entitled.

# Discussion and Decision

# Husband's Appeal

# I. $1M Reimbursement to Wife

Husband contends the trial court abused its discretion in awarding a reimbursement of $1,000,000.00 to Wife for money she spent on the California residence to pay for mortgages, repairs, and expenses. Husband contends that these expenditures came from marital assets – rental income from the California residence and from Deal Zone "profits." *Appellant's Br.* at 9, 11, 13. Therefore, Husband argues Wife was not entitled to any reimbursement whatsoever, let alone a reimbursement of $1,000,000.00.[2] Wife responds, in part, that she was entitled to a reimbursement because, even though Deal Zone was a marital asset, the earnings she made from Deal Zone after she filed her petition for dissolution were not marital assets, and, thus, she is entitled to reimbursement for expenditures she made on the California residence from the time she filed her petition for dissolution up until the date of the final hearing.[3] In Wife's

---

[2] Husband's imprecise citations to the record, specifically his citations to the exhibits, has made our review of this appeal more difficult. Husband's brief cites exhibits eight times with citations such as "Exhibit B," and "Exhibit 16." *Appellant's Br.* at 6, 7. Husband does not identify the specific exhibit volume which contains the exhibit he cites, and he also does not cite the appropriate page numbers within the appropriate exhibit volume. Considering that there are ten exhibit volumes, these insufficiently specific citations have made the task of confirming Husband's factual assertions especially onerous. Also, his citations to exhibits often span dozens of pages. For instance, Husband's citation to "Exhibit 32-37," *see Appellant's Br.* at 37, encompasses 108 pages in Confidential Exhibit Volume 9, hardly the degree of specificity that would facilitate more efficient review of Husband's claims.

[3] Wife raises this argument within her cross-appeal, but we find it appropriate to address it within the context of Husband's argument regarding the reimbursement ordered by the trial court.

words, "the trial court erred by considering Wife's post-filing earnings as a marital asset." *Appellee's Br.* at 24.[4]

[16] A trial court has broad discretion in dividing the marital estate, and we will reverse such a division only for an abuse of discretion. *Goodman v. Goodman*, 94 N.E.3d 733, 742 (Ind. Ct. App. 2018), *trans. denied*. The party challenging the division of marital property must overcome a strong presumption that the trial court complied with the applicable law. *Id.*

[17] Division of marital property is a two-step process *Id.* First, the trial court must determine what property belongs in the marital estate, and, second, it must divide the property in a just and reasonable manner. *Id.* All marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before the parties' final separation, or acquired by their joint efforts. *Trabucco v. Trabucco*, 944 N.E.2d 544, 553 (Ind. Ct. App. 2011), *trans. denied*. This "one-pot" theory ensures that all property is considered and divided according to Indiana law. *Id.*

---

[4] Wife's brief violates our appellate rules, particularly Indiana Appellate Rule 46(A)(8)(a), which requires a party to support arguments by citations to the legal authorities and the record. Wife's brief contains at least seventy factual assertions that are not supported with citation to the record. While some of her citations to exhibits are helpful, others are so imprecise to be of almost no assistance, such as the following citations: "Vol. 6 . . . at 55-232" and "Vol. 9 at 3-169." *Appellee's Br.* at 8, 12. She also cites almost no legal authority. These deficiencies have made it nearly impossible to confirm many of her factual allegations and to consider whether her arguments are on solid legal footing. And even though she is not represented by counsel, she is still required to follow the appellate rules of procedure. "It is well settled that pro se litigants are held to the same legal standards as licensed attorneys." *Picket Fence Prop. Co. v. Davis*, 109 N.E.3d 1021, 1029 (Ind. Ct. App. 2018), *trans. denied*.

[18] The determination of which property belongs in the marital estate is based on the date of the parties' final separation. *Webb v. Schleutker*, 891 N.E.2d 1144, 1149 (Ind. Ct. App. 2008). Only property that is acquired before the date of final separation is subject to division by the trial court as part of the marital pot. *Crider v. Crider*, 26 N.E.3d 1045, 1048-49 (Ind. Ct. App. 2015). The date of final separation refers to the date that the petition for dissolution is filed. *Id.* at 49; *see also* Ind. Code § 31-9-2-46.

[19] We agree with Husband that the California residence and Deal Zone are marital assets. The California residence was purchased during their marriage, and Deal Zone was established during their marriage. *See Tr. Vol. 2* at 17-18, 84-89; *Appellant's App. Vol. 2* at 19; *see Trabucco*, 944 N.E.2d at 553 (all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before the parties' final separation, or acquired by their joint efforts). We also agree with Husband that the rental income collected by Wife from the California residence during the pendency of the dissolution was also a marital asset. *See Smith v. Smith*, 854 N.E.2d 1, 6-7 (Ind. Ct. App. 2006) ("Because Shirley and Greg owned the rental properties together, the income the properties earned after the petition for dissolution was filed and before the court's valuation date was properly considered a marital asset . . . .").

[20] We disagree with Husband, however, that it is clear that funds from Deal Zone that Wife used to pay expenses for the California residence during the pendency of the dissolution were marital assets. Husband argues, "When a marital asset

generates income, that resulting income is likewise a marital asset." *Appellant's Br*. at 12. In support, he cites *Webb*, 891 N.E.2d at 1148-53 for the proposition that "the value of expected profit from growing crops on marital property was a marital asset." *Appellant's Br*. at 12. Thus, Husband likens funds Wife received from Deal Zone during the pendency of the dissolution to profits a married couple receives from selling crops or to the income generated by rental property, such as rental income from the marital residence.

[21] We are not convinced by Husband's analysis. First, the funds Wife received from Deal Zone during the pendency of the divorce arguably are not marital property because those funds did not exist at the time of the filing of petition for dissolution. Only property that is acquired before the date of final separation is subject to division by the trial court as part of the marital pot. *Crider*, 26 N.E.3d at 1048-49. The date of final separation refers to the date that the petition for dissolution is filed. *Id.* at 49.

[22] Second, as to Husband's argument that funds Wife received from Deal Zone were akin to rental income or profits from the sale of crops, the record before us leads us to entertain the possibility that the funds Wife received from Deal Zone during the pendency of dissolution more closely resembled wages or salaries. Salary or wages Wife received from Deal Zone during the pendency of the dissolution proceedings were not "property . . . (1) owned by either spouse before the marriage; (2) acquired by either spouse in his or her own right: (A) after the marriage; and (B) before final separation of the parties; or (3) acquired by their joint efforts." *See* Ind. Code § 31-15-7-4 (a).

Therefore, we remand this case to the trial court and direct it to determine to what degree, if any, that payments Wife made for the California residence during the pendency of the dissolution came from funds from Deal Zone and to the extent, if any, those funds were not marital assets. We direct Wife to provide relevant information regarding Deal Zone to Husband and the trial court forthwith. To the degree the trial court determines that non-marital assets from Deal Zone funded the payments related to the California residence during the pendency of the dissolution, the trial court shall order a reimbursement to Wife in that amount in an amended decree.

## II. Valuation of Deal Zone

Husband contends the trial court erred in "placing an arbitrary $1,000.00 value on a business, [Deal Zone], with an annual income of $700,000." *Appellant's Br*. at 14. Because Deal Zone earned that amount in 2017 (the final year before the dissolution), that value "had no connection to the evidence connected at the fact-finding hearing." *Id*. A trial court has broad discretion in ascertaining the value of property in a dissolution action. *O'Connell v. O'Connell*, 889 N.E.2d 1, 13 (Ind. Ct. App. 2008).

As the trial court correctly found, the parties did not present evidence regarding the value of Deal Zone. *Appellant's App. Vol. 2* at 19. Wife said she presented no such evidence because Deal Zone had no market value. *Tr. Vol. 2* at 6-7. She also testified that Deal Zone had no inventory. *Id*. at 161. On cross examination, Husband's attorney asked Wife about a $90,000.00 account

receivable allegedly owed to Deal Zone at the end of 2016, but Wife said she knew nothing about that account receivable. *Id*. at 180. Finally, Wife testified that any goodwill in Deal Zone is personal goodwill, not enterprise good will. *Id*. at 6. Husband testified that he did not present a valuation of Deal Zone because. during discovery, Wife did not provide information that would have helped Husband present a proposed valuation of Deal Zone to the trial court. *Tr. Vol. 3* at 9-10, 49. The trial court acknowledged that Wife had not provided such information. *Appellant's App. Vol. 2* at 24 n.2.

[26]     We agree with Husband that the trial court's valuation of Deal Zone at $1,000.00 had no connection to the evidence presented at trial. Moreover, Husband was not able to present evidence about Deal Zone's value because of Wife's failure to provide information about Deal Zone. Thus, we vacate the trial court's $1,000.00 valuation of Deal Zone and direct the trial court on remand to assess a new valuation for Deal Zone. Wife shall provide Husband and the trial court the information regarding Deal Zone that Husband had earlier requested during discovery and any other information the trial court may find helpful. The trial court's valuation shall include a valuation of the goodwill in Deal Zone, including both personal and enterprise goodwill. The trial court may, at its discretion, receive additional evidence from the parties regarding the value of Deal Zone. To the extent the trial court determines that the value of Deal Zone is not $1,000.00, it shall revise the division of marital assets in an amended decree to achieve an equal division of marital property.

# Wife's Cross Appeal

[27] Wife argues that the trial court erred in ordering that Husband's attorney fees be paid from the parties' trust account. We review an award of attorney fees in a dissolution action for an abuse of discretion. *Balicki v. Balicki*, 837 N.E.2d 532, 542 (Ind. Ct. App. 2005), *trans. denied*. Specifically, Wife is referring to the following language in the decree: [T]he remaining funds ($32,500) held in Husband's counsel's trust account shall be used to pay attorney fees for Gregg Theobald, Brian Walker, and Ball Eggleston . . . . Any remaining funds in the Husband's counsel's trust account shall be equally divided by the parties. *Appellant's App. Vol. 2 at 23.*

[28] Husband responds that, even if the trial court's order regarding attorney fees was erroneous, Wife invited this error. Husband refers to Wife's proposed findings of fact and conclusions of law, in which she proposed:

> The Court concludes that of the $32,579.45 in the trust account of Husband's attorney, Wife's attorney fees of $9,026.18 shall be paid from the money in the Ball Eggleston trust account. The remaining money in said trust account shall be paid to counsel for Husband for his attorney fees incurred herein through July 17, 2018. Thereafter, each party shall pay their own attorney fees incurred herein.

*Appellant's Supp. App. Vol. 2 at 3-4.*

[29] We first observe that Wife's proposed findings and conclusions and the actual attorney fee provision in the decree stated that the attorney fees of Husband *and* Wife shall be paid from the Husband's counsel's trust account. *Id.*; *Appellant's*

*App. Vol. 2* at 23. However, because Husband's attorney fees ($32,222) were more than three times the amount of Wife's attorney fees ($9,026), *Appellant's App. Vol. 2* at 20, the attorney fee provision in the decree resulted in an unequal division of marital assets, which was contrary to the trial court's conclusion of law that "an equal division of property and debts is appropriate." *Id*. at 22.

[30] We agree with Husband that Wife invited any error in the trial court's attorney fee award. "The doctrine of invited error is grounded in estoppel and precludes a party from taking advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct." *Balicki*, 837 N.E.2d at 541. Here, in her proposed findings of fact and conclusions of law, Wife proposed the disposition of the attorney fee issue that she now challenges in her cross appeal. *See Appellant's Supp. App. Vol. 2* at 3-4. A party may invite an error through proposed findings of fact and conclusions of law. *Cf. Chem. Waste Mgmt. of Ind. L.L.C. v. City of New Haven*, 755 N.E.2d 624, 632 n.4 (Ind. Ct. App. 2001) ("By failing to submit proposed findings with respect to its . . . argument to the trial court, [the appellant] invited any error with respect to that issue."). More generally, we have applied the invited error in various contexts within dissolution cases. *See Webb*, 891 N.E.2d at 1155 (any error by trial court in failing to consider Wife's sale of automobile as dissipating assets and assigning a value to the automobile was invited error in dissolution action because Husband testified that he had no objection to the automobile being sold with no profit, so Husband could not complain about the valuation or alleged error on appeal); *see also Wright v. Wright*, 782 N.E.2d 363, 368 (Ind.

Ct. App. 2002) (where Wife objected at final hearing to only one word in visitation provision and did not object to any part of the agreement submitted to the trial court, Wife's challenge on appeal to visitation provision was barred by the invited error doctrine); *Batterman v. Bender*, 809 N.E.2d 410, 414 (Ind. Ct. App. 2004) (Husband invited error on issue of whether trial court had sufficient evidence to enter temporary child support order and apply it retroactively). Accordingly, we decline to grant relief to Wife on the issue of the trial court's attorney fee award because she invited the error upon which she predicates this claim. *See Balicki*, 837 N.E.2d at 541.

[31] Affirmed in part, vacated in part, and remanded.

Pyle, J., concurs.

Tavitas, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Marriage: <br> Menashi Cohen, <br> *Appellant-Respondent,* <br> v. <br> Fran Cohen, <br> *Appellee-Petitioner.* | Court of Appeals Case No. <br> 19A-DR-2192 |

**Tavitas, Judge, concur in part and dissent in part.**

[32] I respectfully concur in part and dissent in part. I agree with the majority's refusal to grant relief to Wife regarding the attorney fee award. I disagree, however, with the majority's decision to remand regarding Wife's expenses on the California residence and the valuation of Deal Zone.

[33] This decision effectively allows Husband a second chance to present evidence in this case. We "place the burden of producing evidence as to the value of the marital property squarely where it belongs on the shoulders of the parties and their attorneys." *In re Marriage of Church*, 424 N.E.2d 1078, 1082 (Ind. Ct. App. 1981). "[T]he general rule is that parties to a legal proceeding are bound by the

evidence they introduce at trial and they are not allowed a second chance if they fail to introduce crucial evidence." *Id.* We have found "no reason to make dissolution proceedings an exception to this rule." *Id.*

[34] The trial court here did the best it could in light of the lack of evidence presented and what the trial court found to be suspicious circumstances. *See, e.g., Perkins v. Harding*, 836 N.E.2d 295, 302 (Ind. Ct. App. 2005) ("We are confident the court attempted to divide the marital estate equally between the parties, and it did the best it could in light of the dearth of evidence regarding the value of some of the larger assets in the estate."); *Galloway v. Galloway*, 855 N.E.2d 302, 305-06 (Ind. Ct. App. 2006) (holding that the husband was "estopped from appealing the trial court's distribution" where "the trial court was faced with an unenviable task: to divide a marital estate that included both a pension and a business, neither of which had any value placed upon them, by stipulation or otherwise"). Under these circumstances, I would affirm the trial court's decision.